**Ronald Preston WILSON, Plaintiff,**

**v.**

**E.B. WRIGHT, et al., Defendants.**

No. CIV. A. 94–1011–AM.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 19, 1998.

Lisa Bondareff Kemler, Zwerling & Kemler, P.C., Alexandria, VA, for Plaintiff.

Colin Jefferson Hite, Office of the Attorney General, Richmond, VA, for Defendants.

652

## MEMORANDUM OPINION

ELLIS, District Judge.

This 42 U.S.C. § 1983 action grows out of the rape of plaintiff, a prison inmate, by another prisoner. The remaining defendant is Carmen Baylor, the Department of Corrections ("Department") employee who assigned plaintiff to share a cell with the rapist. Plaintiff claims Baylor acted with deliberate indifference when she assigned plaintiff to share a cell with the rapist. Baylor now moves for summary judgment,[1] claiming qualified immunity and moreover claiming that deliberate indifference cannot be shown on this record. Plaintiff also moves for summary judgment on the issue of deliberate indifference.

For the reasons stated herein, summary judgment for plaintiff and for defendant Baylor on deliberate indifference are precluded by the presence of triable issues of fact, but summary judgment is warranted for defendant Baylor on the basis of qualified immunity.

## I.

Plaintiff, a 5'8" tall, 136 pound white male was 18 years old when he was sentenced to twenty-eight (28) years' imprisonment in the City of Hampton Circuit Court for breaking and entering, burglary, and grand larceny. Initially plaintiff was transferred from the Hampton City jail to the Virginia Department of Corrections Southampton Receiving and Classification Center. Then, on April 20, 1993, having turned 19, plaintiff was transferred to Greensville Correctional Center ("Greensville"), where he was placed in the general prison population and assigned to share a double cell with inmate Robert Ramey, a thirty-eight-year-old, six-foot one-inch, 290–pound African–American male serving a thirty-three-and-one-half year sentence for the abduction-with-intent-to-defile and forcible sodomy of a twelve-year-old boy. Seven days later, in the cell they shared, Ramey assaulted and forcibly sodomized plaintiff.

The sole remaining defendant, Baylor, then a Department program support technician, made the ill-fated cell assignment. Available to her at the time were the prison files of both plaintiff and Ramey. Department policies required defendant to review the prison files of both inmates, but she now states that her practice was to examine only the file of the inmate to be assigned, in this case, plaintiff. She also insists that she fully performed all of her assigned duties in connection with this cell assignment in a responsible fashion. Indeed, defendant recalls looking at plaintiff's file, which included some disciplinary reports and a scoring sheet rating him as non-violent. Also included in plaintiff's file was an October 10, 1992, report from a psychologist who conducted an examination of plaintiff and made the following observation:

> [S]ince ... [plaintiff's incarceration,] he is evidencing anxiety and fear of being assaulted by other more aggressive inmates. Due to a deformity of his lower spine, his buttocks protrude, inviting abusive remarks by other inmates. Many of these remarks are of a sexual nature and this created the fear of assault the subject is experiencing.... Due to his impulsivity, immaturity, and small stature he may well be victimized as he fears.

Consistent with her practice, defendant has no recollection of looking at Ramey's file, nor does she recall placing plaintiff in the same cell with Ramey. A review of Ramey's file would have been quite illuminating. It would have disclosed a scoring sheet that marked him as an inmate with a high propensity for violence. It also would have disclosed that Ramey was serving thirty-three-and-one-half years for forcible sodomy and abduction-with-intent-to-defile a twelve-year-old white male in 1981. Beyond this, Ramey's file reflected a long history of disciplinary problems and violence within prison. Specifically, the file indicated acts of inflicting bodily injury on a prison guard, maliciously injuring a correctional employee, damaging property for the purpose of rendering the

[1] By Order dated July 9, 1997, the parties were advised that defendant Baylor's Motion to Dismiss would be treated as a Motion for Summary Judgment. *See Wilson v. Wright,* No. 94–1011–AM (E.D.Va. July 9, 1997)(order directing parties to file all relevant documentation).

prison facility less secure, threatening and assaulting correctional officers, unauthorized presence in another inmate's cell for the purpose of covert sexual activities, disobeying direct orders, assaulting other inmates, sexual assault of a young woman, and sexual assault of a fellow inmate in county jail. Moreover, only three months prior to plaintiff's transfer to Greensville, inmate Ramey was convicted of assaulting another inmate. This victim was allegedly Ramey's sexual partner and was apparently assaulted by Ramey because of his involvement with another inmate. Ramey's file reflects that following this incident, he was referred to the Institutional Classification Committee "for possible assignment to a higher degree security."

Soon after plaintiff's assignment to the cell with Ramey, other inmates cautioned plaintiff that Ramey was reputed to be a violent and aggressive homosexual. Plaintiff immediately attempted to contact his counselor, but was unable to do so. He was able, however, to tell Sergeant Moore, the Unit Supervisor, that he feared Ramey would attack him and therefore he urgently requested a cell change. Moore denied the request. Plaintiff and several other inmates again approached Moore and requested a cell change. This request was also refused.

Then, on April 27, 1993, after the inmates were locked down for the night, Ramey anally sodomized plaintiff by force. The following morning, plaintiff reported the assault to several other inmates who then contacted prison officials. Plaintiff was immediately taken to the medical department and a subsequent medical examination of plaintiff disclosed evidence of trauma to plaintiff's rectum. Ramey was placed in detention pending an investigation, and plaintiff was placed in protective custody after being threatened by other inmates.

## II.

On July 21, 1994, plaintiff filed this 42 U.S.C. § 1983 action alleging that various Department employees violated several of his constitutional rights. Specifically, plaintiff alleges that defendants (1) failed to classify him properly upon his arrival to Greensville; (2) failed to protect him from an assault by his cellmate; (3) failed to protect him from constant verbal threats by other inmates; (4) failed to investigate the assault and punish inmate Ramey; and (5) did not provide the plaintiff with adequate mental health services following the rape. Plaintiff initially listed as defendants E.B. Wright, Warden Tidwell, Chief of Operations Wayne Brown, Chief of Security Major Mays, Captain Staples, Captain Chaplin, Treatment Program Supervisor C. Parker, Supervisor Sgt. D.A. Moore, inmate Ramey, unnamed Institutional Classification Committee ("ICC") members at A, B, C, and D units, unnamed former Custody Classification Board ("CCB") members, and the Medical Administrator of Greensville Correctional Center. Subsequently, plaintiff identified the previously unnamed Institutional Classification Members as A.L. Ethridge, J.S. Thompson, Jr., Carl Flowers, C.E. Howe, J. Everette, and Correctional Officers D. Chapman and A.M. Judkins. Prior to the filing of defendants' Motion for Summary Judgment, the Court dismissed defendant Tidwell and inmate Ramey, and those "unnamed" members of the CCB. See Wilson v. Wright, No. 94–1011–AM (E.D.Va. February 6, 1995)(order dismissing selected defendants). By Order dated July 24, 1996, the Court entered judgment in favor of the remaining defendants on all claims except plaintiff's claim that defendant Moore failed to protect him from the attack by his cellmate. See Wilson v. Wright, No. 94–1011–AM (E.D.Va. July 24, 1994)(order granting summary judgment to all defendants except Moore). Regarding the surviving claim, the Court found that Moore was not entitled to summary judgment on the ground of qualified immunity.

By Order dated October 24, 1996, the Court reconsidered its denial of plaintiff's motion for the appointment of counsel and appointed Lisa Kemler, Esquire, to represent plaintiff. See Wilson v. Wright, No. 94–1011–AM (E.D.Va. October 24, 1996)(order appointing counsel). The Court postponed the pretrial conference, granted plaintiff's motion for a jury trial over defendant's objections, and deferred ruling on plaintiff's discovery requests pending review by plaintiff's newly appointed counsel. In addition,

the Court granted defendant's request to depose plaintiff and inmate Ramey and extended the discovery deadline. *See id.*

On March 5, 1997, plaintiff sought leave, pursuant to Rule 15(c), Fed.R.Civ.P., to amend the complaint to name as a defendant Carmen Baylor of the Records Department, the Department employee responsible for assigning plaintiff to a cell with inmate Ramey. This request, vigorously opposed as time-barred, was ultimately granted. *See Wilson v. Wright,* No. 94–1011–AM (E.D.Va. March 6, 1997)(order granting motion to amend).

Thereafter, defendant Moore filed an offer of judgment pursuant to Rule 68, Fed.R.Civ. P., which offer plaintiff accepted, thereby leaving Baylor as the sole remaining defendant in the action. The matter is now before the Court on cross-motions for summary judgment, which have been fully briefed and argued and are now ripe for disposition.

## III.

In reviewing motions for summary judgment, courts must view the facts in the light most favorable to the party opposing the motion. *See Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). Summary judgment is appropriate when "there is no genuine issue of material fact and the moving party in entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. For the reasons that follow, these principles applied here compel two conclusions. First, the parties' summary judgment motions on the merits must be denied as material facts remain genuinely in dispute. Second, defen-

dant Baylor's summary judgment motion based upon qualified immunity must be granted.

## IV.

It is well established that the Eighth Amendment obligates prison officials to take reasonable precautions to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotation marks and citations omitted). This does not mean that restrictive or even harsh prison conditions must be avoided; indeed, many such conditions are part of the penalty prisoners must pay. But subjecting a prisoner to harm from other prisoners is not part of a prisoner's punishment; it is cruel and unusual punishment, for "gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objectiv[e], any more than it squares with evolving standards of decency." *Farmer,* 511 U.S. at 833 (internal quotation marks and citations omitted). Thus, prison officials must "take reasonable measures to guarantee the safety of other inmates." *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *see also Winfield v. Bass,* 106 F.3d 525 (4th Cir.1997); *Jackson v. Pantazes,* 810 F.2d 426, 430 (4th Cir.1987).

A prisoner alleging that a prison official has failed to protect him from another inmate must show under *Farmer,* which controls here,[2] (i) that he was incarcerated under conditions posing a substantial risk of serious harm and (ii) that the defendant was deliberately indifferent to those conditions. *See Farmer,* 511 U.S. at 834; *Moore v. Winebrenner,* 927 F.2d 1312, 1316 (4th Cir.1991). To satisfy the first *Farmer* prong, a plaintiff must prove that he suffered an "objectively, sufficiently serious" harm. 511 U.S. at 834 (internal quotation marks and citations omit-

2. Although the instant events occurred prior to the decision in *Farmer,* that decision nonetheless controls, as this matter was filed and resolved after *Farmer.* It is settled that when the "[Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." *Harper v. Virginia Department of Taxation,* 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); *see also James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).

5

ted). Under the second prong, the plaintiff must prove that defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that the defendant drew] the inference." *Id.* at 837. Both prongs may be proved circumstantially, but defendant may escape liability by showing that she "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844.[3] Thus when "an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was long-standing, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Farmer*, 511 U.S. at 842–43.

At the outset on these facts, defendant disputes that plaintiff was assaulted by inmate Ramey on the evening of April 27, 1993. While physical evidence exists to corroborate plaintiff's claim that he was raped, Ramey denies the assault and defendant relies on this denial. And, of course, this dispute, by itself, is sufficient to bar summary judgment for plaintiff. The more difficult question treated here is whether defendant is entitled to summary judgment.

In addressing defendant's summary judgment motion, the initial question under *Farmer* is whether plaintiff was exposed to an objectively substantial risk of harm.[4] Given the instant facts, a jury could find such a risk existed. Ramey, a six-foot one-inch, 290–pound inmate with a history of prison assaults and a high-security classification,

was imprisoned for raping a small, young, white male. Plaintiff, a small, young, white male, had a low-security classification, was in prison for a nonviolent offense, and feared sexual attack because of his size and other physical characteristics. Based on these undisputed facts, a jury could find that Ramey posed a serious risk of harm to his cellmate.

The remaining question under *Farmer* is whether defendant was aware of the risk that Ramey posed to plaintiff, and whether she drew the inference that her actions would increase the risk of harm to plaintiff. The record discloses triable issues of fact regarding defendant's actual knowledge of Ramey's dangerousness. Although defendant asserts that she has no recollection of reviewing Ramey's file, and therefore may have had no actual knowledge of his dangerousness, a jury could find otherwise. Specifically, a jury could choose to disbelieve defendant's recollection of the events and find instead that she did review Ramey's file and thus had the required mental state for Eighth Amendment liability. Several circumstances support this conclusion. First, because defendant insisted that she performed all of her assigned duties in a responsible manner when she made the cell assignment, and because prison policies mandated that she examine both plaintiff's and Ramey's files prior to making cell assignments, a jury could conclude that she reviewed Ramey's file and was therefore aware of, yet deliberately indifferent to, the serious risk to plaintiff if required to share a cell with Ramey. Further, as defendant conceded, because plaintiff and Ramey had markedly different security levels—low- and high-risk, respectively—she would have looked further into the files. Both of these factors create a jury issue as to whether defendant had actual knowledge of

---

3. Precisely this occurred in *Rich v. Bruce*, 129 F.3d 336 (4th Cir.1997). There, the defendant prison official knew that plaintiff and his attacker, both housed in disciplinary segregation, were enemies, and that plaintiff was therefore at risk of serious harm if not kept apart from the attacker. Further, the defendant prison official knowingly violated a prison policy by allowing plaintiff and his attacker to be out of their cells at the same time, a violation that ultimately led to plaintiff's injuries. However, because the defen-

dant did not conclude that his policy violation increased the risk to plaintiff, the Fourth Circuit reversed the trial court's finding of liability.

4. The risk feared need not be specific to the plaintiff. Rather, indifference to a generalized risk of harm from an attacker is sufficient. See *Farmer*, 511 U.S. at 843. Accordingly, the inquiry focuses on whether Ramey's file showed a general propensity to harm other inmates.

the information in Ramey's file. From this, a jury might further reasonably conclude that defendant was deliberately indifferent to the risk Ramey posed to plaintiff by placing them in a cell together.

In sum, the record compels the conclusion that a triable issue of material fact exists as to whether defendant was deliberately indifferent to the risk of harm to plaintiff when she assigned plaintiff to share a cell with Ramey. Accordingly, neither party is entitled to summary judgment on the merits.

## V.

Defendant next claims qualified immunity, and she is entitled to a threshold or early determination of this claim. *See Price v. Sasser*, 65 F.3d 342, 345 (4th Cir.1995).

■ Prison officials performing discretionary functions enjoy qualified immunity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *accord Pinder v. Johnson*, 54 F.3d 1169, 1173 (4th Cir.1995); *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). And significantly, an official's qualified immunity claim for an allegedly unlawful official action "turns on the objective legal reasonableness of the action ... assessed in light of the legal rules that were clearly established at the time it was taken." *S.P. v. City of Takoma Park*, 134 F.3d 260, 266 (4th Cir.1998)(internal quotation marks omitted). Thus, in determining whether a state actor is entitled to qualified immunity, a court "must (1) identify the right allegedly violated, (2) determine whether the constitutional right was clearly established at the time of the incident, and (3) evaluate whether a reasonable [actor] would have understood that the conduct at issue violated the clearly established right." *Id.* (citing *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir.1996)). And a right is clearly established if it has been authoritatively decided by the United States Supreme Court, the appropriate circuit court of appeals, or the highest state court where the challenged official act occurred. *See, e.g., Pritchett v. Alford*, 973 F.2d 307, 314 (4th

Cir.1992); *Wallace v. King*, 626 F.2d 1157, 1161 (4th Cir.1980). Nor are judicial decisions the only source of clearly settled rights; in appropriate circumstances, clearly settled rights may be found in statutes or "manifestly included within more general applications of the core constitutional principle invoked." *Pritchett*, 973 F.2d at 314.

■ At the time of the events at issue here, *Farmer* had not been decided. Accordingly, this circuit's pre-*Farmer* law must be consulted to determine whether defendant's assignment of plaintiff to a cell with Ramey violated plaintiff's clearly established statutory or constitutional rights. *See Price*, 65 F.3d 342 (pre-*Farmer* law governed qualified immunity when facts in issue arose prior to *Farmer*.); *cf. S.P. v. City of Takoma Park*, 134 F.3d at 265–68 (applying clearly established law that existed at time of incident, not law that was later decided). This Circuit's pre-*Farmer* law is set forth in *Ruefly v. Landon*, 825 F.2d 792 (4th Cir. 1987). There, corrections officials were held not to have been deliberately indifferent to an inmate's constitutional rights when they assigned the inmate to share a cell with another inmate who the official knew was generally dangerous and violent. *Ruefly* made clear that liability in this context "required evidence of a 'specific known risk of harm to' the individual plaintiff." *Price*, 65 F.3d at 346 (quoting *Ruefly*, 825 F.2d at 794). While the corrections officials in *Ruefly* knew the plaintiff's assailant there to be generally violent and dangerous, there was no showing that the officials knew the assailant posed a specific risk to that plaintiff. On these facts, the Fourth Circuit ruled that the officials had not violated plaintiff's constitutional rights. *See id.*

The effect of *Farmer* was to ease *Ruefly's* specific-risk requirement. *See Price*, 65 F.3d at 345. Under *Farmer*, a prison official need not be shown to be aware of a specific risk to plaintiff. Rather, it is enough

> that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Furthermore, a prison official cannot "escape liability for deliberate indifference by showing that, while he

was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault."

*Id.* 65 F.3d at 345–46 (citing *Farmer,* 114 S.Ct. at 1981–82).

*Ruefly* meets the requirements of a clearly established rule, as the matter was specifically adjudicated by the court of appeals for this circuit. Thus, plaintiff here can defeat defendant's qualified immunity defense only if the record reflects that defendant violated *Ruefly* in making the fateful cell assignment. That is, defendant Baylor is entitled to qualified immunity unless the record reflects that, at the time she made the cell assignment, she knew of and was deliberately indifferent to a specific risk Ramey posed to plaintiff. The record does not so reflect. Even assuming defendant Baylor read both plaintiff's and Ramey's file, it cannot be said that defendant Baylor knew of a specific risk to plaintiff. At most, the record reflects no more than the *Ruefly* record reflected, namely that one of the inmates assigned to share a cell with another was an aggressive and violent person who posed a general risk to the prison population. As in *Ruefly,* there is no evidence here that defendant Baylor knew of any specific risk this violent and aggressive inmate (Ramey) posed to plaintiff. It follows from this that defendant Baylor did not violate the then clearly established rule, *i.e.,* the *Ruefly* rule, when she assigned plaintiff to share a cell with Ramey.[5] Thus, defendant Baylor is entitled to summary judgment.

### VI.

Prison officials should not misconstrue the qualified immunity result reached here. Qualified immunity exists here because the record shows the defendant prison official did not know that the cell assignment decision in issue posed a specific risk to plaintiff, as required by the then-existing established *Ruefly* rule. A different result would obtain under the current clearly established *Farmer* rule. Today, a prison official incurs Eighth Amendment liability if he or she in making a cell assignment knows of, and is deliberately indifferent to, a substantial risk of serious harm one inmate generally poses to any assigned cellmate. This liberalized standard is sensible, for while a sentence of imprisonment appropriately requires that an inmate endure many hardships, no civilized society can allow homosexual rape to be included among the prescribed or tolerated hardships of imprisonment.

An appropriate order shall issue.

---

5. Had this incident occurred prior to 1990, a different result might obtain. Prior to 1990, the prevailing rule in this circuit, reflected in *Withers v. Levine,* 615 F.2d 158, 161 (1980), was that corrections officials could be held liable if they were deliberately indifferent to a known risk of harm to "an identifiable group of prisoners" if plaintiff was a member of the group. Under *Withers,* plaintiff might have argued that as a vulnerably small, white person, he was a member of an identifiable group of prisoners to whom Ramey posed a risk of harm and hence the cell assignment violated the rule. As it happens, *Withers* was overruled in 1990, thereby foreclosing this argument. *See Moore v. Winebrenner,* 927 F.2d 1312, 1316 (4th Cir.1991).