Present:  Carrico, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ.

MARGARET L. ATKINSON

OPINION BY
v. Record No. 000934          JUSTICE LAWRENCE L. KOONTZ, JR.
                                   March 2, 2001
ROMAN SACHNO, JR., M.D.

FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
Humes J. Franklin, Jr., Judge

In this medical malpractice case, we consider whether the
trial court properly held that a physician providing consultant
services for an agency of the Commonwealth was not an
independent contractor and was entitled to the protection of the
doctrine of sovereign immunity from liability for his alleged
acts of negligence.

BACKGROUND

The material facts are not in dispute.  Dr. Roman Sachno,
Jr., is a licensed physician specializing in internal medicine
in a private practice in Staunton, Virginia.  Since 1972, Dr.
Sachno has contracted with Disability Determination Services
(DDS), a division of the Virginia Department of Vocational
Rehabilitation, to serve as a consultant physician.  Pursuant to
this contract, Dr. Sachno performs various examinations of
claimants for DDS, which is responsible for making disability
determinations for claimants applying for Social Security and
Supplemental Security Income disability benefits.

When DDS determines that the available medical evidence needed to make a disability determination is insufficient, it refers the claimant to a consultant physician to undergo a special "consultative examination" to obtain the needed medical information. The contract provides that the specific "type of examination (complete or limited) and/or test(s) purchased depends upon the specific additional evidence needed for adjudication after DDS has obtained all available medical evidence of record." (Emphasis added). DDS does not provide treatment or therapeutic services. Thus, the consultant physicians are utilized by DDS for the limited purpose of obtaining additional medical evidence to assist DDS in determining a claimant's eligibility for disability benefits.

Pursuant to the detailed consultant procedures contained in the contract, DDS schedules appointments with Dr. Sachno for claimants to undergo the consultative examinations. Although Dr. Sachno is not required to accept any referrals from DDS, he has agreed to perform two or three of these examinations per week. After an examination is scheduled, DDS sends an authorization letter to Dr. Sachno detailing the examination and/or tests to be conducted by him. If Dr. Sachno determines that further diagnostic tests are necessary, he is required to obtain authorization from DDS before performing such tests.

Without specific authorization from DDS, he is not compensated for conducting additional tests.

In addition to the authorization letter, DDS provides Dr. Sachno with "consultative examination requirements" which set forth the various protocols and tests that must be performed in specific examinations. Dr. Sachno is instructed to examine the claimant in accordance with the protocols applicable to specific examinations referred to in the authorization letter. The protocols and designated tests merely outline what additional evidence is needed to adjudicate the disability claim. For example, the protocols and examination outline for the assessment of a claimant's respiratory status requires the physician to complete a detailed history and physical examination of the patient, including a report of (1) height and weight, without shoes; (2) ancillary studies as indicated on the authorization; (3) diagnosis; (4) treatment and response; and (5) prognosis. The consultant physician is free to delegate certain parts of the examination to qualified support staff.

Dr. Sachno examines claimants referred by DDS in his private office, using his own medical equipment. DDS does not assist, directly or indirectly, Dr. Sachno in carrying out these examinations. After a particular examination is completed, Dr. Sachno submits a report detailing the results of the examination to DDS. These reports are considered the property of the Social

Security Administration.  Dr. Sachno then bills DDS for each examination that he has completed.  He is paid a fixed fee by the Commonwealth for the examination of each claimant referred to him by DDS under a maximum fee schedule provided by DDS.  Claimants do not pay a fee to Dr. Sachno.  No taxes or other withholdings are deducted from the checks Dr. Sachno receives from the Commonwealth for his services.  Dr. Sachno does not receive any benefits, such as health insurance, and he will not receive retirement benefits from the Commonwealth as a result of his contract with DDS.

It was in the capacity as a consultant physician that Dr. Sachno examined Margaret L. Atkinson, the plaintiff below.  Atkinson had applied for Social Security disability benefits, and DDS had referred her to Dr. Sachno in order to verify her inability to perform work-related activities.  Dr. Sachno was requested to evaluate Atkinson's respiratory and arthritic impairments.  Dr. Sachno's examination of Atkinson included, among other things, ordering a chest X-ray.  This X-ray reflected a possible 12mm nodule which the radiologist reported as not ruling out "an active process including metastatic disease."  Dr. Sachno did not advise Atkinson regarding the results of this X-ray and the contents of the accompanying report that he received from the radiologist.  Approximately five months later, Atkinson was diagnosed with lung cancer.

4

Thereafter, Atkinson filed a motion for judgment against Dr. Sachno for medical malpractice alleging that he negligently failed to advise her of the results of the chest X-ray. Dr. Sachno responded by filing a plea of sovereign immunity.

Following the receipt of briefs, the trial court conducted a hearing on the plea of sovereign immunity. Atkinson argued that Dr. Sachno, based upon the undisputed facts, is an independent contractor and not an employee of the Commonwealth who may be entitled to the protection of sovereign immunity. The trial court initially ruled that "[i]ndependent contractors are not entitled to the protection of sovereign immunity" and then proceeded to determine whether Dr. Sachno was an employee of the Commonwealth or an independent contractor. Relying primarily upon the four-part test for determining whether a master and servant relationship exists that this Court approved in Hadeed v. Medic-24, Ltd., 237 Va. 277, 288, 377 S.E.2d 589, 594-95 (1989), the trial court ruled, as a matter of law, that Dr. Sachno is not an independent contractor.

After deciding that Dr. Sachno was not an independent contractor, and by implication that he is therefore an employee of the Commonwealth, the trial court applied the test established in James v. Jane, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980), to determine whether Dr. Sachno is entitled to the protection of sovereign immunity. The trial court concluded

5

that Dr. Sachno is entitled to sovereign immunity and sustained his plea.  By final order entered on February 15, 2000, the trial court dismissed Atkinson's claim with prejudice.  We awarded Atkinson this appeal.

DISCUSSION

The doctrine of sovereign immunity is indeed alive and well in Virginia.  City of Virginia Beach v. Carmichael Development Company, 259 Va. 493, 499, 527 S.E.2d 778, 781 (2000); Messina v. Burden, 228 Va. 301, 307, 321 S.E.2d 657, 660 (1984).  Furthermore, in order for the purposes of the doctrine to be fully realized, the immunity afforded by the doctrine cannot be limited to the sovereign only.  The cloak of immunity must be extended to "some people who help run the government . . . for the state can only act through individuals."  Messina, 228 Va. at 308, 321 S.E.2d at 661.

The determination that a particular individual is entitled to the protection of sovereign immunity frequently involves unique factual considerations when that individual is a physician.  See, e.g., Benjamin v. University Internal Medicine Foundation, 254 Va. 400, 403, 492 S.E.2d 651, 652 (1997); Lee v. Bourgeois, 252 Va. 328, 331, 477 S.E.2d 495, 497 (1996).  Essentially this is so because while the Commonwealth may have an interest and involvement in the function performed by the physician to accomplish a governmental objective, the means and

6

methods used by the physician to exercise his or her required professional skill and judgment with regard to patients is not readily subject to the control and direction of others.  That control, or lack of it, is the most significant factor in such cases in resolving issues of sovereign immunity and respondeat superior, which are, however, separate and distinct legal concepts.

In James, we refused to grant immunity to a physician who was a full-time member of the faculty of a Commonwealth medical school.  221 Va. at 55, 282 S.E.2d at 870.  In that case, we established a four-part test to determine whether a physician who was an employee of the Commonwealth was entitled to the protection of sovereign immunity.  Id. at 53, 282 S.E.2d at 869. Subsequently, we applied that test in Lohr v. Larsen, 246 Va. 81, 85, 431 S.E.2d 642, 644 (1993).  Application of the James test, however, presupposes that the physician seeking the protection of sovereign immunity is an employee or agent of the Commonwealth.  In other words, the James test is not applicable if the individual is an independent contractor and, thus, not an employee or agent of the Commonwealth.[*]  Contrary to Dr. Sachno's

_____

[*]In McDonald v. Hampton Training School for Nurses, 254 Va. 79, 486 S.E.2d 299 (1997), we observed that the trial court incorrectly relied upon the sovereign immunity cases of James and Messina in concluding that a physician was an independent contractor.  McDonald, 254 Va. at 81 n.1, 486 S.E.2d at 301 n.1.

7

assertions in this case, the trial court properly ruled that independent contractors are not entitled to the protection of sovereign immunity. So that no doubt will exist on that issue, we expressly hold that while some employees or agents of the Commonwealth may be entitled to the protection of sovereign immunity, all independent contractors are excluded from that protection.

Accordingly, the dispositive question in this appeal is whether Dr. Sachno is an employee or agent of the Commonwealth, or is an independent contractor. We defined an independent contractor in Epperson v. De Jarnette, 164 Va. 482, 486, 180 S.E. 412, 413 (1935). There we stated that an independent contractor is

> [a] person who is employed to do a piece of work without restriction as to the means to be employed, and who employs his own labor and undertakes to do the work according to his own ideas, or in accordance with plans furnished by the person for whom the work is done, to whom the owner looks only for results.

Id.

Whether a person is an independent contractor or an employee is generally a question of fact for a jury; however, when "the evidence admits of but one conclusion, the question is

---

We specifically rejected the applicability of James and Messina to issues regarding respondeat superior, thus limiting their application to sovereign immunity issues. Id.

8

one of law." Hadeed, 237 Va. at 288, 377 S.E.2d at 594. This case presents such a question of law.

We recognize that there are abundant tests and criteria that can be used to determine whether the relationship between the individual and the Commonwealth is that of an independent contractor or an employee. See Ross v. Schneider, 181 Va. 931, 939, 27 S.E.2d 154, 157 (1943)(noting numerous criteria to determine relationship); The Texas Co. v. Zeigler, 177 Va. 557, 566, 14 S.E.2d 704, 707 (1941)(recognizing that many potential tests exist for determining whether a person should be classified as an independent contractor). A survey of the many tests and cases "makes it clear that the individual circumstances of each case play an important part in answering the query." The Texas Co., 177 Va. at 566, 14 S.E.2d at 707.

In Hadeed, a case involving the issue of a physician's status as an employee or independent contractor, we used four factors to resolve that issue: (1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power to control the work of the individual. It is well established that the fourth factor, the power of control, is determinative. 237 Va. at 288, 377 S.E.2d at 594-95. We will apply the Hadeed analysis here.

The following facts are pertinent to that analysis. Dr. Sachno conducts his full-time practice of internal medicine in

9

his private office, using his own equipment, and employing his own support staff. The number of examinations he may perform in a given week for DDS is not substantial when compared to the volume of his regular patients. Dr. Sachno is not obligated to accept any referrals from DDS. He is paid a fixed fee for the examination of each claimant referred to him by DDS. No withholdings of any form are deducted from his compensation received from the Commonwealth for conducting these examinations. Dr. Sachno considers himself to be "an independent physician that is asked to do certain work for the State." These facts weigh heavily in support of the conclusion that Dr. Sachno is an independent contractor and not an employee or agent of the Commonwealth. However, consideration of the fourth factor, the power of control, established in Hadeed compels that conclusion in this case.

The numerous regulations, protocols, and procedures under which Dr. Sachno must perform the various examinations and tests sought by DDS merely ensure that the specific and objective medical evidence needed by DDS is obtained. Indeed, the contract between Dr. Sachno and DDS provides that the type of examination and/or tests "purchased" by DDS depends upon the specific additional medical evidence needed by DDS to resolve a particular disability claim. In this context, Dr. Sachno essentially provides a product to DDS: a report detailing the

10

results of the requested examinations and/or tests, and providing objective medical evidence, if any, of a claimed impairment. Accordingly, the various regulations, protocols, and procedures under which Dr. Sachno produces that report, or product, do not constitute control by DDS of the means and methods by which he performs the examinations and tests. Rather, Dr. Sachno exercises his professional judgment in making the medical assessments of a particular claimant's condition in order to accurately produce the report requested by DDS. See McDonald, 254 Va. at 86, 486 S.E.2d at 303 (exercise of professional judgment by a physician is a factor in determining extent of control).

Finally, that Dr. Sachno is required to obtain additional authorization before performing any diagnostic test not specifically listed in the authorization letter is the result of pragmatic and monetary concerns, and is not evidence that DDS controls, or has the right to control, the means and methods by which Dr. Sachno performs the examinations and tests that are authorized. The DDS justifies this requirement on the basis that frequently the information obtainable from additional tests is already in a claimant's file and, thus, additional tests would cause an unnecessary duplication of expense.

> "It is only by consideration of all the facts pertaining to the relationship in any case, including the provisions of the contract, the actual conduct of

> the parties, and the conditions of the business in which they are engaged, that it can be determined whether the [individual] is endowed with that control over his own methods and means of doing the work which is the test of an independent contractor."

The Texas Co., 177 Va. at 568, 14 S.E.2d at 708 (quoting Gulf Refining Co. v. Brown, 93 F.2d 870, 873 (4th Cir. 1938)).

Because the evidence in this case "admits of but one conclusion" under Hadeed, we hold, as a matter of law, that Dr. Sachno is an independent contractor, and not an employee or agent of the Commonwealth.  We further hold that because Dr. Sachno is an independent contractor he is not entitled to the protection of sovereign immunity with regard to Atkinson's claim against him for medical malpractice.

CONCLUSION

For the reasons stated above, the trial court erred in sustaining Dr. Sachno's plea of sovereign immunity. Accordingly, the final order dismissing the case will be reversed, and the case remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

12