**Bobby HEDRICK, Plaintiff,**

v.

**B.J. ROBERTS, Sheriff, Defendant.**

**Ira Jones, Plaintiff,**

v.

**B.J. Roberts, Sheriff, Defendant.**

**Nos. 4:00CV150, 4:00CV151.**

United States District Court,
E.D. Virginia,
Newport News Division.

Sept. 27, 2001.

816

Larry David King, Newport News, VA, Adam Harris Lotkin, Norris & St. Clair, P.C., Virginia Beach, VA, for plaintiffs.

S. Lawrence Dumville, Virginia Beach, VA, for defendant.

### OPINION AND ORDER

BRADBERRY, United States Magistrate Judge.

This matter is before the Court on defendant's motion for summary judgment. In 1996, plaintiffs filed separate law suits in the Circuit Court for the City of Hampton, Virginia, against defendant and ten John Does (unidentified deputies). In January, 2000, the state court dismissed plaintiffs' claims against the ten John Does, leaving only the defendant in both cases. Subsequently, the Circuit Court granted plaintiffs' motions for a nonsuit. On June 15, 2000, each plaintiff refiled a motion for judgment in state court, which defendant successfully removed to federal court.

In February, 2001, the Court denied plaintiffs' joint motion to remand and granted defendant's motion to consolidate the cases. On July 31, 2001, defendant filed a motion for summary judgment, and on September 11, 2001, the matter came on for hearing. For the reasons stated below, defendant's motion for summary judgment is GRANTED.

## I. STATEMENT OF THE CASE

### A. Background

Plaintiffs, Bobby Hedrick and Ira Jones, are both Caucasian males. Jones, is a former police with the Norfolk Police Department. On April 9, 1994, plaintiffs were arrested by Hampton police officers, booked, and transported to the Hampton Jail (hereinafter "the Jail"). Upon arrival, plaintiffs were interviewed and classified. There were two categories of male classifications: (1) pretrial detainees and (2) newly sentenced inmates. The second floor of the Jail was designated for pretrial detainees, while the third floor was for sentenced inmates.

After being classified, plaintiffs were placed in Cell Block 2F4 (hereinafter "2F4"). Along with plaintiffs, there were twenty other inmates, several of which were Caucasian as well. At approximately 8:50 p.m., a group of inmates assaulted the plaintiffs. Plaintiffs' screams for help went unattended for fifteen to twenty minutes before plaintiffs were eventually removed.

Hedrick was immediately transported to the hospital. Jones claims he was denied transportation to the hospital despite his requests. Jones was not taken to the hospital until sometime between 9:00—9:30 a.m. the next day, twelve hours after the attack. Jones alleges that upon his arrival, doctors stated that he was within one hour of dying. Jones needed emergency surgery, lost his spleen, and was hospitalized for approximately one month. As a result of the foregoing events, plaintiffs filed the action now before the Court.

### B. Issues

The issues before the Court are:

1. Whether defendant knew of the substantial risks of harm to plaintiffs, and if defendant did, whether it amounted to "deliberate indifference" to plaintiffs' safety;

2. Whether defendant failed to provide Jones medical treatment, and if defendant did, whether the failure amounted to "deliberate indifference" for Jones' safety;

3. Whether defendant is protected by the doctrine of qualified immunity; and

4. Whether defendant is protected by the doctrine of sovereign immunity against plaintiffs' state tort claims.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Motion for Summary Judgment Standard

As set forth in Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the moving party can show by affidavits, depositions, admissions, answers to interrogatories, the pleadings, or other evidence, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.Civ.P. 56(c). Rule 56 mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party is not entitled to summary judgment if the dispute about a material fact is "genuine." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of fact exists if a reasonable jury could return a verdict for a nonmoving party. *See id* In other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict. *See id.*

Finally,

[w]e must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

*Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir.1992) (citations omitted).

### B. Plaintiffs' Preliminary Local Rule 56(B) Objection

█ Initially, the Court will address plaintiffs' contention that defendant failed to comply with the provisions of Local

Rule 56(B) [1] by not including in the motion for summary judgment a "specifically captioned section" listing the undisputed facts. Plaintiffs argue that because defendant failed to include a "specifically captioned section" listing the undisputed facts, the Court should not consider defendant's motion for summary judgment.

The case of *Williams v. Gradall Co.*, 990 F.Supp. 442 (E.D.Va.1998), is instructive. In *Williams*, similar to plaintiffs herein, the plaintiff raised the same objection to the defendant's motion for summary judgment, arguing that the defendant's failure to comply with Local Rule 56(B) precluded the court from considering the defendant's motion. After noting the reasonableness of the plaintiff's contention, the court stated that it would "[n]evertheless ... resolve the substantive issues raised and alleviate the need to consider them at trial." *Williams*, 990 F.Supp. at 444. Thus, the court in *Williams* exercised its inherent equitable authority and elected to advance judicial economy over an immaterial legal technicality.

Plaintiffs herein make the same reasonable argument as the plaintiff in *Williams*. Although defendant included a statement of facts section, the Court agrees, as plaintiffs assert, that defendant failed to include a specifically captioned section listing the undisputed facts. Nevertheless, the Court, as the court in *Williams*, will "resolve the substantive issues raised and alleviate the need to consider them at trial." *Id.* Thus, the Court declines plaintiffs' invitation to refuse to consider defendant's motion on this ground.

1. Local Rule 56(B), in pertinent part, states: Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. Local Rules of the United States District Court for the Eastern District of Virginia, 56(B).

## C. Eighth Amendment and § 1983 Claims

### 1. Standard for prison officials

Plaintiffs allege, in addition to several state law claims, several 42 U.S.C. § 1983 claims. Specifically, plaintiffs allege that defendant: (1) violated plaintiffs' Fourth Amendment right to be free from unlawful search and seizure (Count 1); (2) violated plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment (Count 2); and (3) violated plaintiffs' Fourteenth Amendment right by: (a) failing to protect plaintiffs from substantial harm, (b) failing to adequately train prison employees, and (c) failing to provide plaintiffs medical treatment (Counts 3 and 4).

It is well established that the Eighth Amendment obligates prison officials to take reasonable precautions to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, this obligation does not "mandate comfortable prisons." *Id.* (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). On one hand, harsh prison conditions are "part of the penalty prisoners must pay." *Wilson v. Wright*, 998 F.Supp. 650, 654 (E.D.Va.1998). Yet, on the other hand, subjecting a prisoner to harm from other prisoners is not part of the prisoner's punishment. *Farmer*, 511 U.S. at 833, 114 S.Ct. 1970. Indeed, it is cruel and unusual punishment, for "gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penalogical objective, any more than it squares with evolving standards of decen-

cy." *Id.* Thus, prison officials must take "reasonable measures to guarantee the safety of other inmates." *Wilson,* 998 F.Supp. at 654 (citing *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).

Under *Farmer,*[2] a plaintiff claiming that a prison official failed to protect him from another inmate must satisfy two elements: (1) that plaintiff was incarcerated under conditions posing a substantial risk of serious harm and (2) that defendant was deliberately indifferent to those conditions, i.e., defendant had a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. The first prong is objective and requires a plaintiff to prove that a defendant's action or inaction resulted in or created a sufficient risk of harm. *Id.* The second prong is subjective and requires a plaintiff to prove that a defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that defendant drew] the inference." *Id.* (citing *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970). Nevertheless, a prison official with actual knowledge of a substantial risk to an inmate's health or safety may still "be found free from liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer,* 511 U.S. at 842–56, 114 S.Ct. 1970.

### 2. *Counts 2, 3, and 4*[3]

At the outset, the Court must clarify which constitutional provision (the Eighth or Fourteenth Amendment) governs plaintiffs' claim. If plaintiffs were pretrial detainees, rather than convicted prisoners, then the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment, governs. In this case, although the Court finds that plaintiffs were pretrial detainees and thus governed by the due process clause of the Fourteenth Amendment, that determination is unnecessary, because "the standard in either case is the same—that is, whether a government official has been 'deliberately indifferent...'" *Brown v. Harris,* 240 F.3d 383, 388 (4th Cir.2001). Therefore, the Court will address plaintiffs' Eighth Amendment claim as if it were cast as a Fourteenth Amendment claim. The upshot is that the Court will address plaintiffs' Eighth Amendment's cruel and unusual punishment claim along with their Fourteenth Amendment claims (Counts 2, 3, and 4) under the same analysis.

In addressing Counts 2, 3, and 4, the Court must first determine if plaintiffs have satisfied the first prong of *Farmer.* In this case, the Court is satisfied that both plaintiffs were exposed to an objectively substantial risk of harm when they were attacked by other inmates. The case law is well settled that the Constitu-

---

**2.** As the court in *Wilson* explained, "[a]lthough the instant events occurred prior to the decision in *Farmer,* that decision nonetheless controls, as this matter was filed and resolved after *Farmer.*" *Wilson,* 998 F.Supp. at 655 n. 3. This result, the *Wilson* court explained, is premised on the well-settled principle that:

> when the [Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and

as to all events, regardless of whether such events predate or postdate our announcement of the rule.

*Id.* (citations omitted). Here, there is no question that plaintiffs filed their case, and that the matter will be resolved, after *Farmer.* Thus, *Farmer* controls this case.

**3.** At the hearing of September 11, 2001, plaintiffs' counsel acknowledged that Count 1 (unlawful search and seizure) was without merit and withdrew the claim. Thus, the Court will not address Count 1.

tion imposes duties on prison officials, who must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates....'" *Farmer,* 511 U.S. at 832–33, 114 S.Ct. 1970 (citing *Hudson,* 468 U.S. at 526–27, 104 S.Ct. 3194). Both plaintiffs herein were hospitalized as a result of the assault in 2F4, thus, plaintiffs have satisfied the first prong.

The next question the Court must determine is whether defendant had the requisite culpable state of mind to satisfy the second prong of *Farmer.* In other words, was defendant aware that plaintiffs would be assaulted by other inmates if placed in 2F4. The answer is disputed. Plaintiffs assert that defendant was aware of forty-one other incidents of inmate-on-inmate attacks, that prison officials informed defendant of such attacks, and that defendant can thus be imputed to have actual knowledge of such risks. In addition, with respect to Jones, he claims that as a former police officer, he should not have been placed in a cell with alleged convicted felons. Jones further argues that failing to protect him because of his status as a police officer directly violated operating policies of the Jail and, thus, amounted to deliberate indifference on defendant's part. The Court disagrees.

### 3. *Defendant acted reasonably.*

Even if the Court assumes that defendant had actual knowledge of the risk of harm to both plaintiffs, defendant would still be free from liability if he "responded reasonably to the risk, even if the harm was not averted." *Farmer,* 511 U.S. at 845, 114 S.Ct. 1970. It is undisputed that defendant, upon taking office as Sheriff in 1993, inherited an aged jail that was patently overcrowded. In 1994, the Jail housed over 350 prisoners, although the facility had a single bed capacity of only

146 at the time. The number of prisoners at the Jail was double the planned capacity. However, defendant did not preside passively and ignore the overcrowded conditions. Rather, he began an aggressive campaign to alleviate the problems. *See Moore v. Winebrenner,* 927 F.2d 1312 (4th Cir.1991) (finding warden not liable when he had embarked on a persistent campaign to alleviate problems of the jail, despite the stabbing of a prisoner who was housed in a jail annex not originally designed to house inmates); *see also Kish v. County of Milwaukee,* 441 F.2d 901, 906 (7th Cir.1971) (finding sheriff not liable because he had taken reasonable steps to cure overcrowding to reduce the risk of assaults). Defendant's campaign included: (1) requesting studies to determine and substantiate the needs of the Jail, (2) implementing work release and diversion programs designed to alleviate overcrowding, (3) filing a law suit against the State Department of Corrections to force the state to accept prisoners, and (4) writing members of the Hampton City Council and the Virginia General Assembly publicizing the problems of the Jail and pleading for additional funding.

In the letter to the General Assembly defendant wrote: "[d]uring my three-month tenure at the Hampton Sheriff's Office, it has become even more apparent that overcrowding is not only an overwhelming problem that must be addressed and eventually alleviated but must be dealt with in the most expedient manner possible." (Def. Mot. Summ. J. at 12 (citing Letter of Roberts to Delegate Christian of 1/20/93)). More significantly, in a letter to the Mayor of Hampton dated February 1, 1993, defendant stated:

> We are not only dangerously overcrowded but seriously understaffed ... I do not wish to overwhelm you with the litany of alarming facts but it is necessary, from time to time to cast a chilling

light on the very problems which exist in the Hampton City Jail... [W]e have reached a crisis level. Our long range goal should be to build a new jail or renovate and add on to the present jail facility.... It is quite evident that new jails are very expensive, but the Hampton City Jail can no longer be packed with an excess of inmates.

(*Id.* Letter from Roberts to Mayor Eason of 2/01/93.)

The facts reflect not a defendant who was deliberately indifferent to the risk of harm to plaintiffs in the Jail, but a defendant who took immediate and reasonable measures to alleviate the problems associated with an overcrowded jail. Although a "prison official's duty ... is to ensure reasonable safety, ... [w]hether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable...." *Farmer*, 511 U.S. at 844–45, 114 S.Ct. 1970 (internal quotations and citations omitted).

Understandably, one problem associated with an overcrowded jail is the increase of inmate-on-inmate assaults. (*See* Def. Mot. Summ. J. (stating "incidences of inmate-on-inmate violence were directly attributable to the overcrowding conditions then existing in the jail")). In this case, plaintiffs were placed in 2F4 because individual cells were not available.[4] As the Jail administrator at the time, James E. Adams, Jr., stated in an affidavit that there were nine isolation cells "available to confine emotionally disturbed and aggressive inmates." (Adams Aff.) However, all of

these cells were "occupied on the evening of April 9 through 10, 1994, by other inmates." (*Id.*) Under the circumstances, the decision to place plaintiffs in 2F4 was not made with deliberate indifference to plaintiffs' safety. The Jail was terribly overcrowded.[5] More importantly, plaintiffs may have been assaulted in any cell. The question is not whether defendant must provide a danger free prison, or even a cell where the potential for assault is minuscule, but rather, whether defendant acted reasonably under the circumstances. *Farmer*, 511 U.S. at 845, 114 S.Ct. 1970 (defendant would still be free from liability if he "responded reasonably to the risk, even if the harm was not averted"). The Court finds that defendant acted reasonably under the circumstances, even though the harm was not averted.

■ Likewise, the Court finds that defendant acted reasonably with respect to training and providing of medical treatment. Medical treatment was provided to Hedrick immediately after his assault, and although there is some dispute regarding when Jones requested transportation to the hospital, there is no question that he was eventually transported to the hospital. The fact that Jones was not immediately transported to the hospital, while Hedrick was immediately hospitalized, does not show deliberate indifference but rather, at most, poor judgment. Thus, finding defendant was not deliberately indifferent to the risk of harm to plaintiffs, the Court GRANTS defendant's motion for summary

---

**4.** It should be noted that the standard practice of the Jail is not to confine inmates in isolation cells, but to place them in cells with other inmates. Isolation cells are generally reserved for emotionally disturbed and aggressive inmates.

**5.** In his affidavit, Adams, stated that during the time frame that is the sujbect of this law suit, "it was virtually impossible to house

prisoners according to age, nature of their charges, past criminal records, or prior jail records." (Adams Aff.) As such, the Court finds that under the circumstances then existing in the Jail, defendant's classification decision of plaintiffs was reasonable and not made with deliberate indifference to their safety.

judgment on Counts 2, 3, and 4. However, the Court notes that even if the Court denied defendant's motion on these counts, defendant would still be protected from liability under the doctrine of qualified immunity, as discussed below.

### D. Qualified Immunity

 State actors, such as prison officials performing discretionary functions, enjoy qualified immunity if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wilson,* 998 F.Supp. at 656 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In determining whether a state actor is entitled to qualified immunity, a court "must (1) identify the right allegedly violated, (2) determine whether the constitutional right was clearly established at the time of the incident, and (3) evaluate whether a reasonable actor would have understood that the conduct at issue violated clearly established rights." *Id.* at 656 (internal quotations and citations omitted). More significantly a prison official's qualified immunity claim for an allegedly unlawful official action "turns on the objective legal reasonableness of the action ... assessed in the light of the legal rules that were clearly established at the time it was taken." *Id.* (citing *S.P. v. City of Takoma Park,* 134 F.3d 260, 266 (4th Cir.1998)).

In *Price v. Sasser,* 65 F.3d 342 (4th Cir.1995), the court held that pre-Farmer law governs qualified immunity when the facts in issue occurred prior to *Farmer. Price,* 65 F.3d at 342. On this point, *Wilson,* is directly applicable. In *Wilson,* a prison inmate, brought a § 1983 action against a Virginia state prison employee, alleging that the employee violated his Eighth Amendment rights by assigning him to a cell with an inmate with a history of violence. First, the court found that pre-Farmer law "must be consulted" on the issue of qualified immunity. *Wilson,* 998 F.Supp. at 656. As the court explained, pre-Farmer law governs because the events alleged by the plaintiff occurred before *Farmer* had been decided. *Id.* Second, the court noted that the Fourth Circuit's pre-Farmer law is set forth in *Ruefly v. Landon,* 825 F.2d 792 (4th Cir.1987). *Id.* The court then explained the distinction between *Ruefly* and *Farmer.* According to the court, under *Ruefly,* there is no liability unless the prison official had "specific" knowledge of a known risk to an individual plaintiff. *Wilson,* 998 F.Supp. at 657 (citing *Ruefly,* 825 F.2d at 794). Under *Farmer,* the court stated, "a prison official need not be shown to be aware of a specific risk to the plaintiff ... [r]ather it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm...." *Id.* at 657. Thus, as the *Wilson* court articulated, the pre-Farmer law requires specific knowledge of harm to a plaintiff, while *Farmer* requires knowledge of general harm to a plaintiff. The court then found that, "[e]ven assuming defendant read both plaintiff's and Ramey's file, it cannot be said that defendant knew of a specific risk to plaintiff." *Id.* at 657.

 In this case, similar to *Wilson,* the facts alleged occurred prior to *Farmer.* As such, pre-Farmer law governs the issue of qualified immunity. Under this Circuit's pre-Farmer law, *Ruefly* is controlling. Under *Ruefly,* defendant would be liable only if he had a specific knowledge that plaintiffs' assailants would have assaulted them in 2F4. As in *Wilson,* the Court finds that "it cannot be said that defendant [Roberts] knew of the specific risk to plaintiff[s]." *Id.* To be sure, defendant was not even at the Jail on the evening of April 9, 1994, nor did defendant

direct plaintiffs to be housed in 2F4. As such, the Court finds that defendant is entitled to summary judgment on the issue of qualified immunity.

### E. Ancillary State Law Claims (Counts 5 and 6)

Plaintiffs allege two common law claims: negligence and gross negligence, respectively. Defendant argues that, as a constitutional officer, he is entitled to sovereign immunity. The Court agrees. In Virginia, the doctrine of sovereign immunity is "alive and well." *Atkinson v. Sachno*, 261 Va. 278, 541 S.E.2d 902, 904 (2001) (citing *City of Virginia Beach v. Carmichael Development Co.*, 259 Va. 493, 527 S.E.2d 778, 781 (2000); *Messina v. Burden*, 228 Va. 301, 321 S.E.2d 657, 660 (1984)). Moreover, "in order for the purpose of the doctrine to be fully realized, the immunity afforded by the doctrine cannot be limited to the sovereign." *Id.* 541 S.E.2d at 904. The "cloak of immunity must be extended to 'some people who help run the government ... for the state can only act through individuals.'" *Id.* (citations omitted). One such individual is a sheriff. *See Messina*, 321 S.E.2d at 661 ("[t]here is very little debate regarding the extension of the doctrine to those who operate at the highest levels of the three branches of government"); *see Star Rug & Upholstery, Inc. v. DeLuca*, 1993 WL 946111, *1 (1993) ("[t]he sheriff is a high level government official generally accorded absolute immunity"). Unless a constitutional officer's act or omission amounts to gross negligence or exceeds the scope of his authority or discretion, the officer is protected. *See James v. Jane*, 221 Va. 43, 282 S.E.2d 864, 869 (1980) ("a state employee who acts wantonly, or in a culpable or grossly negligent manner with respect to the housing of plaintiffs in 2F4, is not protected").

In this case, there is little doubt that defendant, as Sheriff of the City of Hampton, is a constitutional officer. As such, he is protected by the doctrine of sovereign immunity. However, this protection is not absolute, for if defendant acted "wantonly, or in a culpable or grossly negligent manner," he would lose this protection. The Court finds that defendant did not act in a wanton or grossly negligent manner. Defendant actions are reasonable. Thus, defendant's motion for summary judgment on Counts 5 and 6 is GRANTED.

### III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED in its entirety.

The Clerk is DIRECTED to mail a copy of this Order to all counsel of record.