Present: Carrico, C.J., Compton, Stephenson, Lacy, Hassell, and Koontz, JJ., and Whiting, Senior Justice

JAMES J. MCDONALD

v.    Record No. 961831    OPINION BY JUSTICE ELIZABETH B. LACY
                                       June 6, 1997
HAMPTON TRAINING SCHOOL
FOR NURSES, d/b/a SENTARA
HAMPTON GENERAL HOSPITAL

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
William C. Andrews, III, Judge

In this appeal in a medical malpractice case, we consider whether the trial court properly held that, because a physician exercised independent medical judgment in performing his duties, he was an independent contractor as a matter of law.

The plaintiff, James J. McDonald, sued Hampton Training School for Nurses, d/b/a Sentara Hampton General Hospital (the Hospital) alleging that Richard F. Clark, M.D., a pathologist at the Hospital, negligently interpreted McDonald's pathology specimens and failed to timely diagnose cancer. McDonald did not allege any independent acts of negligence by the Hospital, but asserted the Hospital was liable solely through the doctrine of respondeat superior. The trial court entered an order granting the Hospital's motion to strike McDonald's evidence and dismissing the case finding that, as a matter of law, Clark was an independent contractor rather than an employee of the Hospital. Because we conclude that the evidence presented a jury question on the issue of Clark's employment status, we will reverse the judgment of the trial court and remand the case.

The doctrine of respondeat superior imposes liability on

an employer for the negligent acts of its employees.  If, however, the negligent acts were performed by an independent contractor rather than an employee, no master-servant relationship exists between the contractor and employer, and the employer is not liable for the negligent acts.  Norfolk and Western Ry. Co. v. Johnson, 207 Va. 980, 983, 154 S.E.2d 134, 137 (1967).  The factors which are to be considered when determining whether an individual is an employee or an independent contractor are well established:  (1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power to control the work of the individual.  The fourth factor, the power to control, is determinative.  Hadeed v. Medic-24, Ltd., 237 Va. 277, 288, 377 S.E.2d 589, 594-95 (1989).  This factor refers to control over the means and method of performing the work.  Baker v. Nussman & Cox, 152 Va. 293, 304, 147 S.E. 246, 249 (1929).  It is immaterial whether the employer exercises this control; the test is whether the employer has the power to exercise such control.  Smith v. Grenadier, 203 Va. 740, 746, 127 S.E.2d 107, 111-12 (1962).

The trial court's determination in this case turned upon the Hospital's lack of control over Dr. Clark's exercise of his professional judgment in carrying out his duties as a pathologist at the Hospital.[1]  The trial court found that there

---

[1] [1]The trial court also relied on its interpretation of Messina v. Burden, 228 Va. 301, 321 S.E.2d 657 (1984), in concluding that Dr. Clark was an independent contractor.  The trial court referred to the language in Messina stating that the James doctors "were essentially independent contractors as

was "nothing contractually or factually" to suggest that the Hospital controlled the way that Dr. Clark performed his duties but that he used "his independent professional judgment, based on his education and his training and his experience to do that." Thus, the trial court held, as a matter of law, that Clark was an independent contractor, not an employee, of the Hospital.

The Hospital asserts that the trial court was correct in relying on the Hospital's inability to control Dr. Clark's exercise of his professional judgment as conclusive in the determination of his independent contractor status. We do not agree. The proposition adopted by the trial court and argued by the Hospital here may have been a correct statement of the law at one time; however, it is inconsistent with current case law in this jurisdiction and with the methods of operation currently utilized by health care providers.

As early as 1920, this Court held in <u>Virginia Iron, Coal</u>

---

far as their relationship with their patients was concerned," <u>id.</u> at 312-13, 321 S.E.2d at 663, as the <u>Messina</u> court's explanation that the doctors in <u>James</u> were denied sovereign immunity because they were independent contractors. Noting the similarity between Dr. Clark's situation and that of the doctors in <u>James</u>, the trial court concluded that Dr. Clark must also be an independent contractor. This is an incorrect application of the language in <u>Messina</u>. Neither <u>James</u> nor <u>Messina</u> involved the status of an individual for purposes of <u>respondeat</u> <u>superior</u>. The issues in these sovereign immunity cases were governed by the test for determining whether a governmental employee is entitled to sovereign immunity. This test involves four factors, one of which is the control exercised by the governmental employer; however, all four factors must be considered, and the control factor is not determinative of the result. <u>Compare</u> <u>James v. Jane</u>, 221 Va. at 53, 282 S.E.2d at 869, <u>with</u> <u>Hadeed</u>, 237 Va. at 288, 377 S.E.2d at 594-95.

& Coke Co. v. Odle's Administrator, 128 Va. 280, 105 S.E. 107 (1920), that, although a mining company could be liable for the malpractice of a physician employed by it based on the company's agreement to furnish medical services to the employee, this liability could not be based upon the doctrine of respondeat superior. There could be no master-servant relationship between the company and the physician, the Court explained, because the doctor was employed "to render professional services requiring special education and training, and involving the exercise of skill and judgment, which could not, in the nature of things, be controlled by the will and direction of the company. . . . The position of the doctor was rather that of an independent contractor." Id. at 288-89, 105 S.E. at 109. This was the prevailing rationale throughout the country at that time. See, e.g., Schloendorff v. Society of New York Hospital, 105 N.E. 92 (N.Y. 1914); Runyan v. Goodrum, 228 S.W. 397 (Ark. 1921); Joel D. Cunningham, The Hospital-Physician Relationship: Hospital Responsibility for Malpractice of Physicians, 50 Wash. L. Rev. 385, 388-90 (1975).

Weston's Administratrix v. Hospital of St. Vincent of Paul, 131 Va. 587, 107 S.E. 785 (1921), decided a year after Virginia Iron, reconfirmed that view in Virginia. In that case, a patient sought to impose liability on a charitable hospital based on the negligence of a nurse in its employ. Justice Burks, writing for the Court, stated that hospitals were not liable for the negligence of nurses and physicians because there can be no master-servant relationship between a

hospital and a physician or nurse.  107 S.E. at 787.[2]

A physician's status as an independent contractor rather than an employee of a hospital was again reiterated, albeit in dicta, in Stuart Circle Hospital Corp. v. Curry, 173 Va. 136, 3 S.E.2d 153 (1939).  There, a hospital was held liable to a patient for the negligent acts of an intern and a nurse based on an implied contract between the hospital and the patient to provide medical services.  In the course of its opinion, the Court recited that it was "conceded" that a physician is an independent contractor and "alone is responsible for the exercise of professional skill and judgment, subject to no control by the hospital in the execution thereof."  Id. at 149, 3 S.E.2d at 158.

The proposition that a physician is an independent contractor solely because the nature of his profession prevents his employer from acquiring the requisite ability to control his medical activities has not been explicitly overruled in Virginia by case or statute.  Subsequent cases, however, have reached directly contrary results.

In Ritholz v. Commonwealth, 184 Va. 339, 35 S.E.2d 210 (1945), the Commonwealth sought a declaratory judgment and injunction against Ritholz and others claiming that they were practicing optometry without a license based on the doctrine of

_____

[2]This portion of the opinion does not appear in the Virginia Reports; however, the version of the opinion which includes this discussion is the version on file in our Clerk's office and remains the official copy of the opinion.

respondeat superior.[3]  Ritholz operated stores in which licensed physicians examined each customer's eyes, wrote a prescription for eyeglasses, and collected a $2 fee.  The prescription was given to an employee in the store to be filled.  Ritholz claimed that his business was the filling of prescriptions by producing the prescribed eyeglasses.  He argued that the physicians in his stores were independent contractors because he neither exercised, nor attempted to exercise, any supervision or control over the means and method used by these physicians in eye examinations.  Id. at 355-57, 35 S.E.2d at 219.  The Court held that the physicians were employees, not independent contractors, referring specifically to the decisions of other jurisdictions holding that physicians in identical circumstances were employees "notwithstanding the fact that the defendants actually exercise no control over 'the mode, manner or result of the examination of the eyes of the customer and the doctor is left free to exercise his own will (and) judgment and to use his own professional skill and methods in making such examination.'"  Id. at 358-59, 35 S.E.2d at 219 (citations omitted).

Forty years later, this Court held that the Virginia Beach S.P.C.A. was engaged in the illegal practice of veterinary medicine because it operated a full-service veterinary clinic through the services of its licensed veterinarian.  Virginia

---

[3]In contrast, by statute, hospitals are deemed not to be engaged in the unlicensed practice of medicine when they provide medical services.  Stuart Circle, 173 Va. at 146, 3 S.E.2d at 156.

Beach S.P.C.A., Inc. v. South Hampton Roads Veterinary Ass'n, 229 Va. 349, 353, 329 S.E.2d 10, 12 (1985).  The veterinarian was an employee, not an independent contractor, the Court concluded, because the employment contract showed that the S.P.C.A. retained substantial control over the doctor's performance.[4]  Id.  Finally, in Hadeed v. Medic-24, Ltd., a case involving the negligent acts of several physicians, we concluded that the issue whether the doctors were independent contractors or employees was a matter for the jury to determine.  237 Va. at 288, 377 S.E.2d at 595.

Clearly, these cases have undermined the applicability of the principle set out in Virginia Iron, Weston's Administratrix, and Stuart Circle.[5]  This jurisprudential

---

[4]The contract provided that the doctor receive an annual salary, a percentage of the gross receipts, and a portion of the charges for spaying and neutering.  The contract also provided that the doctor "accepted his employment 'subject to the general supervision and pursuant to the orders, advice and direction of' the S.P.C.A., and that he would perform his duties 'to the reasonable satisfaction of' the S.P.C.A."  Id. at 351, 329 S.E.2d at 11.

[5]Other cases, although not addressing the independent contractor issue directly, are not consistent with the principle as originally stated in Virginia Iron. For example, in P.M. Palumbo, Jr., M.D., Inc. v. Bennett, 242 Va. 248, 251, 409 S.E.2d 152, 153 (1991), we held that physicians cannot be independent contractors but must be employees or officers of professional corporations providing health care services.  In Lohr v. Larsen, 246 Va. 81, 88, 431 S.E.2d 642, 646 (1993), a case involving a physician working for the state, we noted that "when a government employee is specially trained to make discretionary decisions, the government's control must necessarily be limited in order to make maximum use of the employee's special training and subsequent experience." Earlier this year, in Schwartz v. Brownlee, 253 Va. 159, 163-64, 482 S.E.2d 827, 829 (1997), we held that a physician was an agent of a corporate non-health care provider when providing post-operative treatment to a patient.

evolution is consistent with changes adopted in other jurisdictions.  See, e.g., Beeck v. Tuscon General Hosp., 500 P.2d 1153 (Ariz. App. 1972); Medi-Stat, Inc. v. Kusturin, 792 S.W.2d 869 (Ark. 1990); Rice v. California Lutheran Hosp., 163 P.2d 860 (Cal. 1945); Moeller v. Hauser, 54 N.W.2d 639 (Minn. 1952); Bing v. Thunig, 143 N.E.2d 3 (N.Y. 1957); John D. Hodson, Annotation, Liability of Hospital or Sanitarium for Negligence of Physician or Surgeon, 51 A.L.R. 4th 235, 281-85 § 9[c] (1987).[6]

The federal courts also recognize that the exercise of professional judgment in providing medical treatment alone cannot be determinative of the employment relationship between a physician and an employer for purposes of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (1994 & Supp. 1997).  Some circuits have treated the contract terms as critical to the determination of the relationship, Robb v. United States, 80 F.3d 884, 891 (4th Cir. 1996), while others look to the intent of the parties, Lilly v. Fieldstone, 876 F.2d 857, 859 (10th Cir. 1989).

Retention of the blanket rule articulated over 70 years ago in Virginia also does not reflect the changing circumstances surrounding the practice of medicine.  "The

---

[6]Jurisdictions retaining the prohibition against the existence of a master-servant relationship generally subscribe to the view that if a such a relationship exists between a hospital and a physician, the hospital would be illegally practicing medicine without a license, a view rejected in this jurisdiction.  Stuart Circle Hospital Corp. v. Curry, 173 Va. at 146, 3 S.E.2d at 156.

conception that the hospital . . . undertakes . . . simply to procure [doctors] to act upon their own responsibility, no longer reflects the fact." Bing v. Thunig, 143 N.E.2d at 8. In addition to the staff privileges granted physicians with private practices, hospitals "regularly employ on a salary basis a large staff of physicians, nurses and internes, . . . and they charge patients for medical care and treatment." Id. "To an increasing extent" patients no longer select their physicians; they are often supplied by the hospital or clinic. "Hospital and other corporate institutions that provide medical care have increased the number and the frequency of salaried arrangements for physicians. . . . [C]ontracts with hospital-based specialists have dramatically increased." Arthur F. Southwick, The Law of Hospital and Health Care Administration, 546 (2d ed. 1988).

Finally, consistent application of the proposition advanced by the Hospital here would require that virtually every professional who is expected to exercise independent judgment in the performance of the duties of the workplace would have to be deemed an independent contractor, regardless of the scope of his or her duties or the limitations on the employment.

Therefore, after reviewing our prior cases and considering the current manner in which medical services are provided, we conclude that, for purposes of determining employment status, the exercise of professional judgment by a physician in the performance of professional duties is a factor, but not the

only factor, to be considered in evaluating the employer's power to control the means and method utilized to perform the work. Having resolved the nature of the test to be applied, we now consider whether the record supports the trial court's holding that Clark was an independent contractor as a matter of law.

Dr. Clark is the Director of Pathology at the Hospital. He is a licensed and board certified physician and has worked under a contract at the Hospital for thirty-three years. As Director of Pathology, Dr. Clark's general responsibilities include interpreting various specimens, performing autopsies, bone marrow aspirations and biopsies, and, to a lesser extent, consulting with patients who have problems related to hematology pathology, although he did not meet or consult with McDonald, the patient in this case.

The Hospital owns the pathology laboratory, and laboratory personnel are employees of the Hospital. Dr. Clark's contract provides that he "shall provide all the administrative, professional, supervisory, quality assurance and educational services relating to the operation of the" laboratory, but he has no authority to hire or discharge employees of the laboratory. Although Dr. Clark has no authority to purchase supplies or equipment for the laboratory, he participates in the Hospital's annual budget process.

The Hospital pays Dr. Clark a set monthly fee for his services and reimburses him for all of the costs of his practice, including his business license tax, malpractice

insurance, and professional dues.  The Hospital does not withhold federal, F.I.C.A., state or local income or occupational taxes from his salary, and his income is reported on a 1099 federal tax form, not a W-2 form.  The Hospital is not responsible for his unemployment compensation, workers' compensation contributions, vacation pay, sick leave, or retirement benefits.

Dr. Clark must interpret all slides that the Hospital presents for review, and his salary is not related to the number of slides he evaluates.  He may render services to other entities and receive compensation for such work, but he must obtain the Hospital's written authorization before working elsewhere.[7]  His contract requires that he maintain board certification, a requirement not otherwise necessary to perform pathology services.

The Hospital has no control over Dr. Clark's independent medical judgment nor has it influence over his diagnostic opinions about pathologic material.  His contract provides, however, that he must satisfy the Hospital in the performance of his duties and that he will "comply with the bylaws, rules and regulations, policies and directives of the Hospital and

---

[7]During his tenure with the Hospital, Dr. Clark has performed services and has been compensated as a consultant at Kecoughtan Veteran's Hospital and McDonald Army Hospital and has served as Director of the Laboratory at Langley Air Force Base and the Director of Pathology at Mary Immaculate Hospital.  Dr. Clark currently performs services for the state medical examiner's office.  Although he has never been refused permission to work for another entity, the Hospital did require him to choose between working for it or Mary Immaculate Hospital.

its medical staff."

All laboratory reports are printed on Hospital letterhead and are the property of the Hospital. Additionally, the Hospital sets the fees charged patients, bills patients, and collects payments. Dr. Clark is required to keep time records for these billing purposes. The Hospital's contract explicitly refers to Dr. Clark as an independent contractor, but when asked whether he thought he was an employee of the Hospital, Dr. Clark responded "[w]ell, in some regards I think that might be the case, although this [contract] states differently."

Whether a person is an employee or an independent contractor is generally a question of fact for the jury. Hadeed, 237 Va. at 288, 377 S.E.2d at 594. Where the evidence admits of only one conclusion, the question is a matter of law. Stagg v. Taylor's Adm'r, 119 Va. 266, 270, 89 S.E. 237, 238 (1916). Taking these facts and the inferences they raise in the light most favorable to McDonald, as we must do when reviewing a motion to strike, Hadeed, 237 Va. at 280-81, 377 S.E.2d at 590, the facts do not lead to a single conclusion, and the issue should have been left to the jury for determination.

Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings.

Reversed and remanded.