## CIRCUIT COURT OF AUGUSTA COUNTY

Johnson

v.

Moises E. Quinones et al.

March 17, 1999

BY JUDGE THOMAS H. WOOD

In deciding this case, the Court has assumed that the allegations of negligence set forth in Plaintiff's Motion for Judgment are true and that this negligence proximately caused the plaintiff to lose his sight. The issue before the Court is whether the two health care providers involved, Dr. Moises E. Quinones and Dr. Joseph Morris, are entitled to the protective cloak of sovereign immunity.

The decision on the sovereign immunity issue in this case involves the proper application of a four-pronged test developed and applied over the years by the Virginia Supreme Court. As set forth by the Court in the case of *Messina v. Burden*, 228 Va. 301, 313, 321 S.E.2d 657 (1984), the factors to be considered are:

1. The nature of the function the employee performs;

2. The extent of the governmental entity's interest and involvement in the function;

3. The degree of control and direction exercised by the governmental entity over the employee; and

4. Whether the alleged wrongful act involved the exercise of judgment and discretion.

This test was first enunciated by the Court in the case of *James v. Jane*, 221 Va. 43, 267 S.E.2d 108 (1980), and was most recently applied by the Court in the case of *Lohr v. Larsen*, 246 Va. 81, 431 S.E.2d 642 (1993).

In concluding that the *James* test applies in the case at bar, the Court specifically is rejecting plaintiff's argument that both defendants are

"independent contractors" merely because their contracts with the Commonwealth say they are and that, as a result, they are not entitled to claim sovereign immunity. The Court is further rejecting plaintiff's position that a jury can decide the sovereign immunity issue or any part of it.

In his brief and in oral argument, plaintiff cited the case of *McDonald v. Hampton Training School for Nurses*, 254 Va. 79, 486 S.E.2d 299 (1997), for the proposition that the jury should be allowed to determine the defendants' status in the case at bar. The *McDonald* Court, I suggest, made it clear that plaintiff's position is simply not correct. *Id.* at 82, n. 1, 486 S.E.2d at 301, n. 1. In my view, the third prong of the *James* test set forth above determines whether the individual is the type of state agent who is entitled to claim sovereign immunity.

Dr. Quinones is a physician board-certified in internal medicine and emergency room medicine. His function is to provide medical care to the inmates at Keen Mountain Correctional Center, a maximum security facility in Buchanan County, Virginia. His contract expressly states that he is an independent contractor. He is paid by the hour by the Commonwealth. The Commonwealth does not withhold income tax or Social Security taxes, he receives no state benefits, and his income is reported to him on a Form 1099.

Dr. Joseph Morris is an optometrist. He likewise provides care in his area of expertise to inmates at Keen Mountain Correctional Center. His contract also specifies that he is an independent contractor. He receives no state benefits, nothing is withheld from his pay, and his income is reported to him on a Form 1099. As a result of the limitations inherent in his profession, Dr. Morris performs limited services for the inmates and is paid per service per inmate. He is not paid on an hourly basis like Dr. Quinones.

The plaintiff has suggested that the Commonwealth's interest and involvement in the functions of these two defendants is slight. The Court believes otherwise. Both the Federal and State Constitutions prohibit cruel and unusual punishment, § 53.1-32(A) of the Code of Virginia mandates "proper" medical and mental health care and treatment for prisoners, and morality and common decency dictate that men and women confined against their will and totally deprived of their access to health care providers be in fact provided by the Commonwealth with acceptably adequate medical care. This cannot be accomplished without the utilization of skilled health care providers.

The Commonwealth, acting through the Department of Corrections, exercised a significant degree of control and direction over both defendants.

In the case of Dr. Quinones, the Department determined which inmates he would see, when he would see them, and where he would see them. He could

not refuse to see an inmate, and he could not terminate a relationship with one of them. All of his staff were provided by the Department. He could not hire or fire any of this staff. All of the equipment he used and all the supplies he used were supplied by the Department. He could prescribe only specified drugs acquired from specified pharmaceutical companies. He could not refer an inmate to a specialist for a second opinion without prior approval, his requests for such a referral were not rubber-stamped, and, if approved, the Department would determine which specialist could be used. It was virtually impossible for him to obtain a lateral consult, i.e., a second opinion from a physician in the same specialty. He was prohibited from prescribing certain drugs, such as tranquilizers, and had significant limitations placed over his ability to prescribe analgesics. He had no control whatsoever over the patients' diets. Further, inmates who were prescribed medication had to come to a specific location, a "pill window," to have their medication administered on a dose-by-dose basis. He was unable to provide inmates with even as much as one day's supply of medication. He was able to obtain laboratory tests, and, in fact, could have obtained a laboratory test which ought to have revealed the existence of the pituitary tumor which caused the plaintiff's blindness.

With respect to Dr. Morris, there are not nearly so many limitations placed upon him as upon Dr. Quinones. This is, however, primarily because he is not qualified to do as much as Dr. Quinones. For example, he cannot prescribe medication, and therefore, restrictions imposed upon Dr. Quinones with respect to medications are not imposed upon Dr. Morris. However, the degree of control is similar. Similar to Dr. Quinones, he has no control over which inmates he sees, when he sees them, or where he sees them. His staff is provided for him by the institution. The type of frame for the glasses he prescribed was controlled by the Department as was the type of lenses he prescribed. His ability to obtain a consult was also limited by the requirement that the Department approve, in advance, any referral he made. His relationships with his patients, the inmates, was not in any sense confidential. Similar to Dr. Quinones, he charged no fees, and he used the equipment and supplies provided for him by the Department of Corrections.

With respect to both of these defendants, the nature of the workplace, a Correctional Center, and the patients under their care require a degree of control and direction by the Department that neither defendant would ever encounter in private practice.

As stated by the plaintiff in his brief, the essence of this case is the failure of the defendants to take a proper history and to make a proper examination. Both of the defendants in this case were free to exercise their discretion in the

manner in which they performed an examination, including the taking of an accurate history and the charting of the facts learned from a proper examination and history, of forming correct diagnoses, and in prescribing, within the limitations described above, a course of treatment. These decisions are their decisions to make and will be made based upon their education, training, and good judgment. By regulation, Department of Corrections, Guideline Number 702, cited by the plaintiff, medical personnel were to have no restrictions imposed upon them regarding the practice of medicine. As discussed above, there were a large number of restrictions placed upon them. However, they were free to conduct examinations in any way they saw fit, and this would include the taking of a complete and accurate history, and they were free to exercise their discretion in prescribing a course of treatment within the restrictions imposed above. This is precisely the area in which the alleged negligence occurred.

One last observation is appropriate at this point. Plaintiff suggested at oral argument and in his brief that under the third prong of the test, in order to be material to the analysis involved in a sovereign immunity case, the control and direction exercised by the entity must touch and concern the negligent act involved. This is true with regard to the fourth prong of the test. However, I can find no support in any of the reported cases for plaintiff's suggestion. As Mr. Eskridge pointed out at oral argument, if plaintiff's argument is correct, Dr. Larsen would not have been able to claim the benefit of sovereign immunity.

I would appreciate it if Mr. Eskridge would prepare, circulate, and submit for entry an appropriate Order sustaining the special plea in bar of both Dr. Quinones and Dr. Morris.

Based upon earlier proceedings in this Court, the matter remains set for trial on the gross negligence claim of the plaintiff against both defendants.