# CIRCUIT COURT OF THE CITY OF WINCHESTER

Carolyn Stottlemyer

    v.

John W. Ghramm
and Winchester
Medical Center, Inc.

July 13, 2001

Case No. (Law) 91-L-181

BY JUDGE JOHN J. MCGRATH, JR.

This matter is before this Court on Defendant, Winchester Medical Center, Inc.'s, Demurrer to the Plaintiff's Motion for Judgment. In this medical malpractice case, the Plaintiff alleges that on August 27, 1997, she was admitted to Winchester Medical Center, Inc., to undergo surgery to be performed by Defendant, John W. Ghramm, M.D. Plaintiff alleges that during the surgical procedure performed by the Dr. Ghramm, Plaintiff suffered serious injuries. Plaintiff further alleges that Defendant, Dr. Ghramm, failed to provide the applicable standard of medical care and treatment and that the Defendant, Winchester Medical Center, Inc., negligently credentialed and supervised Dr. Ghramm.

Winchester Medical Center, Inc., demurs to Plaintiff's Motion for Judgment, arguing that there are no independent causes of action in Virginia for negligent credentialing or negligent supervision. Under well-accepted principles, a demurrer tests only the legal sufficiency of the claims stated in the pleading challenged. While a demurrer does not admit the correctness of the pleading's conclusions of law, it admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may

be fairly and justly inferred. Thus, as stated in *Thompson v. Skate America, Inc.*, 261 Va. 121, 540 S.E.2d 123 (2001), the sole question to be decided by the trial court is whether the facts thus pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against the defendant.

## I. *Negligent Credentialing*

There is sparse appellate authority available in Virginia on whether there is an independent cause of action for negligent credentialing or negligent granting of staff privileges by hospitals. However, there is a clear split among Virginia circuit courts. The Defendant cites and relies on the case of *Stuart Circle Hospital Corp. v. Curry*, 173 Va. 136, 3 S.E.2d 153 (1939), in which the Supreme Court held that a negligent intern was not an independent contractor and that the hospital could be held liable for his negligent acts. The Defendant argues that the *Stuart Circle* case, in *dicta*, used language and rationale which was a general statement of the law in most states when it was decided, and bars holding a hospital civilly liable for the acts of physicians who are only members of its medical staff (and not employees):

> It is conceded that a hospital is not responsible for the acts of an attending physician, whether a member of its staff or an outsider, except where by contract it has assumed responsibility. This is based on the ground that such physician is an independent contractor and alone is responsible for the exercise of professional skill and judgment, subject to no control by the hospital in the execution thereof. The instant case does not come within this principle. Here we have an alleged contract to render medical service and nursing. The intern is not an independent contractor so far as the patient is concerned. His contract is with the hospital.

*Stuart Circle Hosp. Corp. v. Curry*, 173 Va. 136, 149 (1939). However, the continuing validity of *Stuart Circle* has been called into question by the Supreme Court's opinion in *McDonald v. Hampton Training School for Nurses*, 254 Va. 79, 84, 486 S.E.2d 299 (1997) ("These cases have undermined the applicability of the principles set out in ... *Stuart Circle*.").

The Plaintiff, on the other hand, relies on the cases of *Carter v. Jefferson Memorial Hospital Corp.*, 9 Va. Cir. 489 (1982) (Grenadier, Judge), and *Alderson v. Alexandria Hospital*, 40 Va. Cir., 363 (1996) (Swersky, Judge), to support its position. The Circuit Court of Alexandria in *Carter v. Jefferson Memorial Hospital Corp.*, 9 Va. Cir. 489 (1982) (Grenadier, Judge), held that

a hospital has a duty to exercise reasonable care to insure the competence of its medical staff and to supervise the care provided in the hospital by staff physicians. The Circuit Judge cited a number of cases from other jurisdictions to support its holding (many of which are cited below). Judge Grenadier further noted that the *Stuart Circle* case was not dispositive of the basic issue in the case, that of whether the hospital owes a duty to its patients to use due care in the selection of its medical staff. The Court noted that:

> In *Stuart Circle* a patient sued the hospital for negligence in the performance of medical and nursing services by an intern and a nurse, both of whom were employed by the hospital. In affirming a verdict for the plaintiff, the court stated that although a hospital is generally not responsible for the acts of an attending physician, whether a member of its staff or an outsider, on the theory that he is an independent contractor, when the physician is employed by the hospital he is not an independent contractor as far as the patient is concerned, and the hospital is liable for his negligence.
>
> It is the opinion of the Court that *Hill* and *Stuart Circle* are not dispositive of the basic issue involved in this case. In this case the plaintiff is not claiming that the defendant is vicariously liable for the negligence of the physician under the theory of respondeat superior. Rather, the plaintiff's claim is founded on the theory that the hospital owes a duty to its patients to use due care in the selection of its medical staff, in the granting of specialized surgical privileges, and in reviewing the performance and competence of its medical staff. The underlying concept is foreseeability, that it was reasonably foreseeable that the hospital may cause harm or present an unreasonable danger to its patients by its failure to exercise reasonable care in the performance of these duties.

*Carter v. Jefferson Memorial Hospital Corp.*, 9 Va. Cir. 489 (1982) (Grenadier, Judge). In his opinion, in *Alderson v. Alexandria Hospital*, 40 Va. Cir. 363 (1996), Judge Swersky also held that there was an independent cause of action for negligent credentialing.

The Defendant, on the other hand, cites to *Kump v. Costescu*, a 1995 case from the Circuit Court of Alexandria, and to *Mason v. Potomac Hospital Corp. of Prince William*, a 1996 case from the Circuit Court of Prince William County, in which those courts sustained a demurrer to a claim for negligent credentialing. These courts, however, gave no specific reasoning for their decision to sustain the demurrer other than to state that Virginia did not

recognize a cause of action for negligent credentialing. Given the lack of appellate authority and the split in the circuit courts within the Commonwealth, it is appropriate to seek guidance from other jurisdictions.

Outside of the Commonwealth of Virginia, approximately twenty-five to thirty states have recognized some form of negligent credentialing/supervision cause of action against a hospital in a medical malpractice case. *See, e.g., Humana Med. Corp. v. Traffanstedt*, 597 So. 2d 667 (Ala. 1992) (recognizing duty but finding no liability under particular facts); *Storrs v. Lutheran Hosps. & Homes Soc. of Am., Inc.*, 661 P.2d 632 (Alaska 1983); *Fridena v. Evans*, 127 Ariz. 516, 622 P.2d 463 (1981); *Elam v. College Park Hosp.*, 132 Cal. App. 3d 332, 183 Cal. Rptr. 156 (1982); *Kitto v. Gilbert*, 39 Colo. App. 374, 570 P.2d 544 (1977); *Insigna v. LaBella*, 543 So. 2d 209 (Fla. 1989); *Mitchell County Hosp. Auth. v. Joiner*, 229 Ga. 140, 189 S.E.2d 412 (1972); *Darling v. Charleston Community Mem. Hosp.*, 33 Ill. 2d 326, 211 N.E.2d 253 (Ill. 1965) (followed by *Jones v. Chicago HMO*, 191 Ill. 2d 278, 291, 730 N.E.2d 1119, 2000 Ill. LEXIS 656, 246 Ill. Dec. 654 (2000)); *Leanhart v. Humana, Inc.*, 933 S.W.2d 820, 43:10 Ky. L. Summary 35 (Ky. 1996) (allowing patient access to documents placed in doctor's peer review file for a corporate negligence cause of action); *Ferguson v. Gonyaw*, 64 Mich. App. 685, 236 N.W.2d 543 (Mich. App. 1975); *Gridley v. Johnson*, 476 S.W.2d 475 (Mo. 1972); *Hull v. North Valley Hosp.*, 159 Mont. 375, 498 P.2d 136 (1972); *Rule v. Lutheran Hosps. & Homes Soc.*, 835 F.2d 1250 (8th Cir. 1987) (applying Nebraska law); *Oehler v. Humana Hosp.*, 105 Nev. 348, 775 P.2d 1271 (1989); *Corleto v. Shore Mem. Hosp.*, 138 N.J. Super. 302, 350 A.2d 534 (N.J. Super. Ct. Law Div. 1975); *Raschel v. Rish*, 110 A.D. 2d 1067, 488 N.Y.S.2d 923 (N.Y. App. Div. 1985); *Blanton v. Moses H. Cone Mem. Hosp.*, 319 N.C. 372, 354 S.E.2d 455 (1987); *Benedict v. St. Luke's Hosps.*, 365 N.W.2d 499 (N.D. 1985) (*explained by Rudh v. Rudh*, 517 N.W.2d 632, 1994 N.D. LEXIS 128 (N.D. 1994)); *Albain v. Flower Hosp.*, 50 Ohio St. 3d 251, 553 N.E.2d 1038 (1990), *overruled in part on other grounds by Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St. 3d 435, 628 N.E.2d 46 (1994); *Browning v. Burt*, 66 Ohio St. 3d 544, 613 N.E.2d 993 (1993), reh. denied, 67 Ohio St. 3d 1439, 617 N.E.2d 688 (1993); *Strubhart v. Perry Mem. Hosp.*, 1995 Okla. 10, 903 P.2d 263 (1995); *Huffaker v. Bailey*, 273 Ore. 273, 540 P.2d 1398 (1975); *Thompson v. Nason*, 527 Pa. 330, 591 A.2d 703 (1991); *Rodrigues v. Miriam Hosp.*, 623 A.2d 456 (R.I. 1993); *Utter v. United Hosp. Ctr.*, 160 W. Va. 703, 236 S.E.2d 213 (1977) (*cited by McGraw v. St. Joseph's Hosp.*, 200 W. Va. 114, 488 S.E.2d 389, 1997 W. Va. LEXIS 15 (1997)); *Johnson v. Misericordia Community Hosp.*, 99 Wis. 2d 708, 301 N.W.2d 156 (1981); *Sharsmith v. Hill*, 764 P.2d 667 (Wyo. 1988).

The jurisdictions which have recognized a negligent credentialing cause of action have generally adopted what is commonly referred to as a "corporate liability" theory, *i.e.*, the corporation (hospital) owes a separate duty of care to patients to allow only physicians with proper credentials to use it facilities. *See, e.g., Humana Medical Corp. of Ala. v. Traffanstedt*, 597 So. 2d 667, 1992 Ala. 188 (1992); *Rule v. Lutheran Hospitals*, 835 F.2d 1250 (8th Cir. 1987) (applying Nebraska law). Many of these jurisdictions also blend "negligent credentialing" and some form of "negligent supervision" into one cause of action. *See, e.g., Fridena v. Evans*, 127 Ariz. 516, 622 P.2d 463 (1980); *Oehler v. Humana, Inc.*, 105 Nev. 348, 775 P.2d 1271 (1989)). As noted by the Supreme Court of Oklahoma, there has been no state which completely rejected the corporate liability or negligence theories in hospital cases. *See Strubhart v. Perry Memorial Hosp.*, 1995 Okla. 10, 38, 903 P.2d 263, 276 (1995).

Those states which have not recognized a negligent credentialing cause of action have generally based their decisions on state statutes which grant hospitals "peer review" immunity for their credentialing activity. *See, e.g., St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 510, 40 Tex. Sup. Ct. J. 712 (Texas, 1997); *Lemuz v. Fieser*, 261 Kan. 936, 933 P.2d 134 (1997). Although § 8.01-581.16 of the Code of Virginia grants immunity to members of and consultants to various healthcare communities, boards, groups, commissions, or other entities engaged in credentialing and medical review activities, it does not appear to provide any immunity to the entity itself, but only to the individual members and consultants to such entities. *See Alderson v. Alexandria Hosp.*, 40 Va. Cir. 363 (1996) (Swersky, Judge). In any event, Defendant, Winchester Medical Center, Inc., has not raised this statute as a basis for its demurrer.

The Court views the basic issue of this case to be the question of duty. Does a hospital owe a duty to the patients who use its facility to use reasonable care in credentialing the physicians who enjoy staff privileges at the hospital? The question of whether such a duty is owed is generally grounded on the concept of foreseeability. *See, e.g., Carter v. Jefferson Memorial Hosp. Corp.*, 9 Va. Cir. 489 (1982) ("the underlying concept is foreseeability, that it was reasonably foreseeable that the hospital may cause harm or present unreasonable danger to its patients by its failure to exercise reasonable care"). It is clearly foreseeable that if a hospital opens its facilities to demonstrably incompetent professionals, including independent contractors, that injury to patients will occur. Although the physician may be an independent contractor, the hospital cannot knowingly or negligently permit one lacking the minimal

professional credentials to use its facilities to provide services which pose such an inherent danger of injury.

Therefore, it is not surprising that all hospitals have a process for credentialing physicians, and they are required to do so in order to obtain and retain their accreditation. Common sense would indicate that a hospital, like virtually any business, would and should examine the baseline capability of both its employees and the independent contractors who regularly use its facilities to insure at least minimal professional qualifications. This is most certainly true in today's medical environment where many patients have no practical option in choosing surgeons, anesthesiologists, pulmonologists, nurses, etc. who will provide service. It would seem only logical and commonsensical that a patient being wheeled on a gurney into an operating room and looking up at four to eight heavily masked professionals standing in front of millions of dollars of high-tech medical equipment would normally assume that someone has made an effort to ensure that these people meet minimal professional standards. *See, e.g., Bing v. Thunig*, 2 N.Y.2d 656, 163 N.Y.S.2d 3, 143 N.E.2d 3 (1957); *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St. 3d 435, 628 N.E.2d 46 (Ohio 1994).

In discussing an analogous legal issue, the Supreme Court of Ohio in *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St. 3d 435, 628 N.E.2d 46 (Ohio 1994), made the following pertinent observation:

> In applying the traditional elements in this way, those courts invariably recognize the status of the modern-day hospital and its role in contemporary society. Not only is the hospital of today a large, well-run business, as we noted in *Avellone* when we abolished charitable immunity for hospitals, but advances in medical technology have inevitably spawned increased specialization and industrialization. Hospitals are the only place where the best equipment and facilities and a full array of medical services are available at any time without an appointment. With hospitals now being complex full-service institutions, the emergency room has become the community medical center, serving as the portal of entry to the myriad of services available at the hospital. As an industry, hospitals spend enormous amounts of money advertising in an effort to compete with each other for the health care dollar, thereby inducing the public to rely on them in their time of medical need. The public, in looking to the hospital to provide such care, is unaware of and unconcerned with the technical complexities and nuances surrounding the contractual and employment arrangements between the hospital

and the various medical personnel operating therein. Indeed, often the very nature of a medical emergency precludes choice. Public policy dictates that the public has every right to assume and expect that the hospital is the medical provider it purports to be.

*Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St. 3d at 444, 628 N.E.2d at 53 (Ohio 1994).

It is important to note that this cause of action relates to "credentialing" and not to normal ongoing supervision of the physician. This point was well summed up by the Supreme Court of Ohio in *Albain v. Flower Hosp.*, 50 Ohio St. 3d 251, 553 N.E.2d 1038 (1990), when it stated:

> Thus, a plaintiff must demonstrate that but for the hospital's lack of care in selecting the physician, the physician would not have been granted staff privileges and the plaintiff would not have been injured. *Id.* See, also, *Ferguson v. Gonyaw* (1976), 64 Mich. App. 685, 236 N.W.2d 543. Moreover, once a competent and careful physician has been granted staff privileges, the hospital will not thereafter be liable unless it had reason to know that the act of malpractice would most likely take place. That is, where a previously competent physician with staff privileges develops a pattern of incompetence, which the hospital should become aware of through its peer review process, the hospital must stand ready to answer for its retention of such physician. See, generally, Williams, "The Quandary of the Hospital Administrator in Dealing with the Medical Malpractice Problem," 55 *Neb. L. Rev.* 401, 406-07 (1976).
>
> We must stress that this independent duty of the hospital is limited to the exercise of due care in the granting of staff privileges, and the continuation of such privileges, to independent private physicians. A physician's negligence does not automatically mean that the hospital is liable, and does not raise a presumption that the hospital was negligent in granting the physician staff privileges. *Crumley v. Memorial Hospital, Inc.*, 509 F. Supp. 531 (D. Tenn. 1978), citing *Mooney v. Stainless, Inc.*, 338 F.2d 127 (6th Cir. 1964), certiorari denied (1965), 381 U.S. 925. Nor is a hospital required to constantly supervise and second-guess the activities of its physicians, beyond the duty to remove a known incompetent. Most hospital administrators are laypersons with no medical training at all. See Note, Medical Malpractice — Ostensible Agency and Corporate Negligence (1986), 17 *St. Mary's L. J.* 551, 572, fn. 101. In any

event, only licensed physicians, not hospitals, are permitted to practice medicine or surgery in this state. R.C. 4731.41.

*Id.*, 50 Ohio St. 3d at 258-59; 553 N.E.2d at 1045-46.

The Supreme Court of Virginia in *McDonald v. Hampton Training School of Nurses*, 254 Va. 79 (1997), has shown that it considers changes in the nature of the health care industry and of society in general to have brought into serious question the common law distinction between "employees" and "independent contractors" and when an entity may be liable for acts of what would have been considered independent contractors at common law. Although *McDonald, supra,* is not directly on point and does not involve negligent credentialing, the Court's reasoning and holding seems to be highly suggestive of where our Supreme Court is going on these issues.

In writing for a unanimous court, Justice Lacy indicated that matters involving the relationship of hospitals and doctors who practice in hospitals have rendered much of the common law precedent "inconsistent with the methods of operation currently utilized by health care providers." *Id.* at 82. Justice Lacy then stated:

> Retention of the blanket rule articulated over 70 years ago in Virginia also does not reflect the changing circumstances surrounding the practice of medicine. "The conception that the hospital ... undertakes ... simply to procure [doctors] to act upon their own responsibility, no longer reflects the fact." *Bing v. Thunig*, 143 · N.E.2d at 8. In addition to the staff privileges granted physicians with private practices, hospitals "regularly employ on a salary basis a large staff of physicians, nurses and interns ... and they charge patients for medical care and treatment." Id. "To an increasing extent" patients no longer select their physicians; they are often supplied by the hospital or clinic. "Hospital and other corporate institutions that provide medical care have increased the number and the frequency of salaried arrangements for physicians. ... Contracts with hospital-based specialists have dramatically increased." Arthur F. Southwick, *The Law of Hospital and Health Care Administration*, 546 (2d ed. 1988).
>
> Finally, consistent application of the proposition advanced by the Hospital here would require that virtually every professional who is expected to exercise independent judgment in the performance of the duties of the workplace would have to be deemed an independent contractor, regardless of the scope of his or her duties or the limitations on the employment.

Therefore, after reviewing our prior cases and considering the current manner in which medical services are provided, we conclude that, for purposes of determining employment status, the exercise of professional judgment by a physician in the performance of professional duties is a factor, but not the only factor, to be considered in evaluating the employer's power to control the means and method utilized to perform the work.

254 Va. at 85-86.

Although *McDonald* does not deal with a hospital's liability for negligently credentialing a physician, the reasoning seems to be consistent with the clear trend of case law to impose such a liability. It may well be, for example, that the physicians in an emergency room are "independent contractors" and that the surgeons and other specialists who are called in to treat people are "independent contractors," in the common law meaning of the term, but the patient comes to the hospital for treatment, and does not come to a physical plant to deal with a dizzying array of independent contractors. In many cases, the patient has no idea who the various "professionals" who treated him worked for (at least until the myriad of bills arrive after discharge).

This Court, therefore, holds that there is a cause of action for negligent credentialing in Virginia. However, unlike the Ohio courts and the courts of some other states, this Court finds that in order to pursue such a claim, a Plaintiff must specifically plead that they reasonably relied upon the hospital's credentialing process and that such a reliance caused them injury before they can state a cause of action. The Plaintiff has failed to make such an allegation in this case.

This Court believes that reliance is a critical factor in a negligent credentialing suit because patients frequently have a prior relationship with a physician who is treating them and cannot rationally claim their injury was proximately caused by the hospital's negligent credentialing when the patient made a decision to use a particular physician without any reference to whether or not the doctor had staff privileges at a particular hospital. For example, if one is being treated by one's own physician, who was selected by the patient prior to hospitalization and with whom the patient has received a continuing course of treatment, it is hard to see how a hospital would be responsible because that physician negligently administers a fatal drug in the hospital as opposed to its being administered in the physician's office. The Supreme Court of Montana cited with approval the following annotation from A.L.R.2d:

In the normal situation where a sick or injured person consults his own doctor for diagnosis and treatment, and the latter recommends hospital care, the hospital to which the patient is admitted is not liable for the doctor's misconduct resulting in injury to the patient, even though such misconduct takes place at the hospital, and even though certain other links between the hospital and the doctor, such as the circumstance that the latter is on the former's "staff," may exist.

*Hull v. North Valley Hosp.*, 159 Mont. 375, 388, 498 P.2d 136, 142 (1972). *See also, Rodrigues v. Miriam Hosp.*, 623 A.2d 456 (R.I. 1993).

Also, negligent credentialing is a cause of action which requires an emphasis on the facts surrounding the credentialing and recredentialing of physicians. Normally, it will have nothing to do with the facts and circumstances of the physician's conduct during the treatment which gives rise to the current lawsuit against the physician. *Cf., e.g., Corleto v. Shore Mem. Hosp.*, 138 N.J. Super. 302, 350 A.2d 534 (N.J. Super. Ct. Law Div. 1975). Given that the evidence required to prove a negligent credentialing claim has nothing to do with the particular alleged acts of malpractice which give rise to this cause of action, the question of whether the actions should be joined for trial remains to be determined.

## II. *Negligent Supervision*

The Virginia Supreme Court addressed the issue of whether there was an independent cause of action for negligent supervision in *Chesapeake and Potomac Tel. Co. v. Dowdy*, 235 Va. 55, 365 S.E.2d 751 (1988). In *Dowdy*, the Plaintiff suffered from an illness and was frequently absent from work. The Plaintiff contended that bouts of the illness were brought on by undue stress from his supervisors who were employed by the Defendant. The employer contended that plaintiff's work habits were unprofessional and that he decreased the morale of his co-workers and subsequently terminated the Plaintiff for his excessive absenteeism. The Plaintiff then brought an action for negligent supervision against C. & P. The Virginia Supreme Court held that "there is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances and we will not create one here." *See* 235 Va. at 61. In a decision later that same year, the Supreme Court of Virginia, once again, was confronted with a case involving a claim for negligent supervision. In *J. v. Victory Tabernacle Baptist Church*, 236 Va. 206, 372 S.E.2d 391 (1988), involving the sexual assault of a child by a church employee, the Supreme Court stated that it would not address the

merits of the claim, "because appellant failed to submit any authority either on brief or in oral argument concerning negligent supervision." *See J. v. Victory Tabernacle Baptist Church*, 236 Va. 206, 208 (1988). As a result of these two holdings, the courts in Virginia, except two circuit courts, have held that Virginia does not accept negligent supervision as an independent cause of action. *See, e.g., Permison v. Vastera, Inc.*, 51 Va. Cir. 409 (2000); *Courtney v. Ross Stores, Inc.*, 45 Va. Cir. 429 (1998); *Berry v. Scott and Stringfellow*, 45 Va. Cir. 240 (1998); *Dawkins v. Richmond Community Hosp.*, 30 Va. Cir. 377 (1993); *but see, Johnson-Kendrick v. Sears, Roebuck & Co.*, 39 Va. Cir. 314 (1996), and *Mangum v. Providence Hall Assocs.*, 1995 Va. Cir. LEXIS 1418 (1995)). Furthermore, federal courts in Virginia have held consistently, when applying Virginia law to state claims, that there is no independent cause of action for negligent supervision. *See, e.g., Thompson v. Town of Front Royal*, 117 F. Supp. 2d 522 (W.D. Va. 2000); *Johnson v. Enterprise Leasing Co.*, 1999 U.S. App. LEXIS 15752 (4th Cir. 1999); *Spencer v. General Elec. Co.*, 894 F.2d 651 (4th Cir. 1970), rev'd on other grounds.

Under the weight of case authority, this Court cannot find a viable cause of action for a hospital's failure to "supervise" a health care professional who is an independent contractor utilizing the hospital facilities.

## Conclusion

The Defendant, Winchester Medical Center, Inc.'s, Demurrer to the negligent credentialing cause of action is sustained with the Plaintiff's being given fifteen days to file an amended Motion for Judgment if it is inclined to do so. As regards to the Defendant, Winchester Medical Center, Inc.'s, Demurrer concerning negligent supervision or inadequate supervision, the Demurrer is sustained, and Plaintiff is not permitted to file an amended pleading raising this claim.

The Clerk of the Court is directed to send certified copies of this Opinion and Order to Steven M. Garver, Esquire, Counsel for Plaintiff; to Tara M. McCarthy, Esquire, Counsel for the Defendant, Winchester Medical Center, Inc.; and to William Cremins, Esquire.