196

# CIRCUIT COURT OF WISE COUNTY

Todd Richardson,
Administrator of the
Estate of Opal Collins,
deceased

v.

John Maskell
and St. Mary's Hospital, Inc.

March 8, 2004

Case No. L00-318

BY JUDGE J. ROBERT STUMP

St. Mary's has filed a pre-trial plea of non-agency, alleging as a mater of law that Dr. Maskell was an independent contractor hired by Mountain Coverage (MC), and not an employee of the hospital; thus, all claims should be dismissed as to the hospital.

Plaintiff administrator argues that the issue of Dr. Maskell's employment status is a mixed question of law and fact and should be submitted to a jury for decision. Plaintiff also contends Dr. Maskell was an agent of the hospital as a matter of law.

The court has carefully reviewed and considered counsel's extensive briefs, exhibits, transcribed discovery deposition testimony, case law, and oral arguments and makes the following findings of fact and conclusions of law.

The Virginia Supreme Court established the agency rule in *McDonald v. Hampton Training School*, 254 Va. 79-87 (1997): "The factors which are to be considered when determining whether an individual is an employee or an independent contractor are well established: (1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power to control the work of an individual. The fourth factor, the power to control, is determinative. *Hadeed v. Medic 24, Ltd.*, 237 Va. 288. . . ."

There is a written contract here between MC and the hospital, which declares, *inter alia*, that all emergency room (ER) physicians, including Dr. Maskell, are "independent private contractors." However, that same contract provides more than twenty requirements imposed upon the ER physicians by the hospital, which could be interpreted as a power to control exerted by the hospital over these physicians. The contract giveth with one hand, but taketh away with the other.

The hospital argues that, on seven previous hospital visits, the plaintiff's decedent signed treatment consent forms that said all physicians working in the hospital's ER were "Independent Private Contractors"; and there was a prominently displayed sign in the ER to the same effect. However, ER signs and other form documents, signed by plaintiff's decedent on the day in question, declare the ER physicians, including Dr. Maskell, were employees of the hospital.

Plaintiff contends that Dr. Maskell was an employee of the hospital because it selected and engaged Dr. Maskell; had the power to dismiss him; paid his compensation (this is disputed by the facts); and that it possessed extensive, broad, and powerful control over Dr. Maskell's work. Plaintiff further argues the hospital presented and provided the decedent with Dr. Maskell as its treating ER physician on January 9, 2000, in conjunction with the hospital staff, employees, equipment, and nurses to assist him, follow his directives, order tests, and discharge patients (as done to the decedent) with after-care instructions.

Plaintiff further contends that Dr. Maskell was an apparent agent, or had apparent ostensible authority as an employee, of the hospital. This first impression issue has not been decided in Virginia. Although the hospital argues the doctrine of apparent agency is contrary to Virginia law, plaintiff cites a volume of recent state and federal cases which hold otherwise. The Virginia Supreme Court by dictum is apparently levitating towards this modern trend of health care providers and hospitals.

> Retention of the blanket rule articulated over seventy years ago in Virginia also does not reflect the changing circumstances surrounding the practice of medicine. "The conception that the hospital ... undertakes ... simply to procure [doctors] to act upon their own responsibility, no longer reflects the fact." *Bing v. Thunig*, 143 N.E.2d at 8. ... "To an increasing extent patients" no longer select their physicians; they are often supplied by the hospital or clinic. "Hospital and other corporate institutions that provide medical care have increased the number and frequency of salaried

arrangements for physicians. ... Contracts with hospital-based specialists have dramatically increased. . . ."

*McDonald, supra,* p. 85.

Virginia Circuit Court Judge John J. McGrath, Jr., also similarly opined in *Stottlemyer v. Ghramm,* 60 Va. Cir. 474, 482 (2001):

> Although *McDonald* does not deal with a hospital's liability for negligently credentialing a physician, the reasoning seems to be consistent with the clear trend of case law to impose such a liability. It may well be, for example, that the physicians in an emergency room are "independent contractors" and that the surgeons and other specialists who are called in to treat people are "independent contractors," in the common law meaning of the term, but the patient comes to the hospital for treatment, and does not come to a physical plant to deal with a dizzying array of independent contractors. In many cases, the patient has no idea who the various "professionals" who treated him worked for (at least until the myriad of bills arrive after discharge).

*See also* Virginia Circuit Court Judge Randall G. Johnson's decision on the theory that a physician may be the apparent agent of a hospital in *Irby v. Richmond Pediatric Associates,* 16 Va. Cir. 383 (1980).

The modern trend of the case law discloses that hospitals increasingly hold themselves out to the public in expensive advertising campaigns as offering and rendering quality health services. Patients who seek medical help through the ER facilities of modern day hospitals are usually unaware of whether the physician is an independent contractor or an agent of the hospital, and this should not prohibit a patient from seeking compensation from the hospital which offers the emergency room care. Some other modern state appellate courts are holding that a hospital could be liable for the negligence of the independent contractor emergency department physician based on ostensible authority or apparent agency.

The issues here are presented to the court pre-trial based on discovery depositions and proffered facts by counsel, which is speculative and uncertain. The jury and court ultimately should make any final decisions based on the exact facts presented at trial.

Here there are too many facts and factors in dispute subject to two different inferences and interpretations. This court cannot and will not find as a matter of law that Dr. Maskell was an independent contractor, nor an

employee or agent of St. Mary's Hospital. To be safe in an overabundance of judicial caution, this issue will be submitted to the jury for determination. *See McDonald* and *Hadeed, supra.* The issue of apparent ostensible authority and/or agency will also be submitted to the jury for separate decision. Also, the contested issue of reasonable reliance by the decedent that Dr. Maskell was an independent contractor or an employee of the hospital will be submitted to jury for determination.

Plaintiff in a late brief now asserts a new theory of liability which is not pleaded in his amended motion for judgment that St. Mary's is liable for the alleged negligence of Dr. Maskell as an independent contractor because St. Mary's allegedly had a non-delegable duty to provide non-negligent medical care in an emergency room setting. He also argues that this non-delegable duty is imposed on the hospital through Medicare and Medicaid regulations. This court rejects plaintiff's late theory of liability since it is unpleaded and is not well founded in Virginia medical malpractice law.

Plaintiff filed a fifth motion in limine. The general legal issue presented here is whether defendants may admit evidence of phone calls made by the decedent to two nurses at the hospital pursuant to Va. Code § 8.01-397, "the Dead Man's Statute."

The court has carefully reviewed oral argument, counsel briefs, deposition transcripts, and makes the following findings of fact and conclusions of law.

The pre-trial preliminary facts disclose that Opal Collins, later the plaintiff-decedent, made separate phone calls to two hospital nurses (who later entered nurses' notes in her chart after learning of her heart attack at another hospital) complaining of continued chest pain, and she was told by the nurses to return to the ER for re-evaluation. One nurse told Dr. Maskell, who told the nurse he wanted to talk to the patient before she registerd. Roger Perry, the decedent's boyfriend of many years, who paid a portion of the decedent's funeral expenses, but is not a statutory beneficiary, will testify that he, not the decedent, called the hospital and was told by a nurse to bring the decedent back to the hospital ER, which he did.

Va. Code § 8.01-397, the Dead Man's Statute, provides in pertinent part, "In an action by or against a person who, from any cause, is *incapable of testifying,* or by or against the ... administrator ... of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or *interested party* founded on his *uncorroborated testimony.*" (Emphasis added.) The primary intent and purpose behind the Dead Man's Statute is to level the playing field and prevent self-serving testimony.

There is no dispute that Opal Collins, the person who allegedly made the two phone calls, is now deceased and unable to testify to confirm or deny the purported statements on the phone.

The question of the late nurses' notes charting the two phone calls after the decedent's heart attack was known is a matter of credibility for the jury.

The real issue centers around the factual interpretation of words in the statute: (1) "interested party"; (2) "uncorroborated"; and (3) "testimony."

(1) The court finds that the two hospital nurses are not adverse or interested parties in regard to the telephone calls plaintiff seeks to exclude. Therefore, the Dead Man's Statute does not apply.

The two nurses are not parties to this cause of action. The nurses received the telephone calls prior to any alleged acts of negligence on their part as agents of the hospital, and therefore they cannot be held financially responsible to anyone for their action in receiving or recording the telephone calls of the decedent. Also the hospital represents that it will not seek indemnification from the nurses for any liability as to their conduct in this case. (The hospital is estopped from taking inconsistent positions, and a waiver and release by the hospital in favor of nurses in this case is attached to the hospital's supplemental brief.)

Roger Perry is an interested party since he would be entitled to reimbursement from the decedent's estate for partial payment of her funeral expenses. Perry has a pecuniary interest in this action even though he is not a statutory beneficiary. Therefore, even if the nurses are interested parties (which the court has found they are not), the Dead Man's Statute does not apply to the two telephone calls to the nurses because Roger Perry is an interested party and will testify that he called the ER, not the decedent, and that a nurse told him to bring the decedent back to ER for re-evaluation. See *Johnson v. Raviotta*, 264 Va. 27, 563 S.E.2d 727 (2002).

(2) The court has found the nurses are not interested parties, and the Dead Man's Statute is not applicable. Therefore corroboration is unnecessary to prove. However, corroboration does exist for the two telephone calls by the decedent to the nurses as follows: (A) Plaintiff has alleged in his motion and amended motion for judgment and other pleadings the existence of a telephone call to the hospital between the first and second visits by the decedent to the hospital, and plaintiff is bound by his pleadings; and (B) the nurses' late records in the hospital chart, which may be admitted under the Hearsay Shopbook Rule Exception.

(3) This brings us to the interpretation of the word "testimony" in the Dead Man's Statute, which does not include "documents" or other "evidence." It might appear that the late nurses' notes in the hospital chart are self-serving, and thus not capable of corroboration. In *Johnson v. Raviotta, supra*, the Virginia Supreme Court said at p. 36, "corroboration for purpose of the Dead Man's Statute cannot come from the mouth of the witness sought to be corroborated." However, such documentary evidence, the nurses' late chart

notes, does not come "from the mouth" of the witness and thus can operate as corroboration. It is not "testimony" as described in the Statute, but they are documents or other evidence. Therefore, the Dead Man's Statute is not applicable.

Wherefore, for the reasons cited above, and assuming the evidence at trial is the same as proffered here by counsel, the court will deny plaintiff's fifth motion in limine and will allow the nurses to testify as to the decedent's two telephone calls to the hospital ER between the decedent's visits to the hospital on January 9, 2000.